746 P.2d 1016

**Erin P. ROEH, Plaintiff–Respondent,**

v.

**Robert P. ROEH, Defendant–Appellant.**

No. 16664.

Court of Appeals of Idaho.

Nov. 30, 1987.

Marc J. Weinpel (Weinpel, Woolf, Just, Combo & Davis), Idaho Falls, for defendant-appellant.

Royce Lee (Jenkins Law Office), Idaho Falls, for plaintiff-respondent.

WALTERS, Chief Judge.

Upon appeal to the district court, a decision by a magistrate to award custody of a minor child to Robert Roeh in a divorce action was held to be in error. The district court found that the magistrate relied on evidence too remote in time to be relevant in determining the best interests of the child. The district court set aside the custody award and remanded the case to the magistrate for further proceedings. Mr. Roeh appeals from the district court's decision. We affirm.

The facts are as follows. Erin Roeh was previously married from March of 1978 until her divorce in June of 1981. She and

Robert Roeh were married in January of 1982. On December 18, 1983, they had a daughter, Faith. Almost one year later, on November 13, 1984, Erin filed for divorce from Robert. After a three-day trial, ending on May 10, 1985, the magistrate concluded the marriage should be dissolved and he took under advisement the question of custody of the child. Several months later, on October 22, 1985, counsel for both parties met with the trial judge in chambers. At that meeting the magistrate orally announced his decision to award *joint legal* custody with primary physical custody of the minor child to Mr. Roeh. The court directed Mr. Roeh's counsel to prepare the findings of fact and conclusions of law. Those counsel-drafted findings, conclusions and judgment were adopted verbatim by the trial court and entered on January 6, 1986. As entered, the magistrate's findings and conclusions determined that "joint legal custody," with "primary physical custody" in Mr. Roeh, should be awarded. Erin appealed to the district court. The district court set aside the lower court's custody decision and remanded the case for the introduction of new evidence. The district court ruled that the findings prepared by Mr. Roeh's counsel assigned excessive weight to "irrelevant" evidence of past behavior presented at trial rather than focusing upon matters that would demonstrate present parental fitness and the current parent-child relationship. Mr. Roeh then appealed.

■ On this appeal, we are not bound by the district court's appellate decision. We exercise free review, that is to say, we focus directly on the correctness of the magistrate's determination, independently of the decision of the district court. *Robinson v. Joint School District No. 331*, 105 Idaho 487, 670 P.2d 894 (1983); *Ustick v. Ustick*, 104 Idaho 215, 657 P.2d 1083 (Ct. App.1983). Essentially, the controlling issue on this appeal is whether the trial court abused its discretion in deciding the custody issue by considering improper factors in making its determination, by failing to consider statutorily mandated factors, and by assigning too much weight to some factors while ignoring others. A related issue, for

guidance on remand, is whether the magistrate properly applied I.C. § 32–717B in awarding "joint custody" to both parents with primary physical custody to the father.

## I

■ In determining custody, a child's welfare and best interests are of paramount importance. *Shumway v. Shumway*, 106 Idaho 415, 418, 679 P.2d 1133, 1136 (1984). The controlling statute, I.C. § 32–717, provides guidance in respect to the instant case:

> In an action for divorce the court *may*, before and after judgment, give such direction for the custody, care and education of the children of the marriage as *may* seem necessary or proper in the best interests of the children. The court *shall* consider all *relevant* factors which *may* include:
>
> . . . .
>
> 5. The mental and physical health and integrity of all individuals involved; and
>
> 6. The need to promote continuity and stability in the life of the child. [Emphasis added.]

The statute gives wide discretion to a judge regarding custody decisions. However, the statute restrictively states: "The court *shall* consider all *relevant factors....*" I.C. § 32–717 [emphasis added]. Implicitly, the court must avoid considering irrelevant factors.

In determining relevant factors for consideration, the magistrate in the instant case looked to subsection 5 of I.C. § 32–717, referring to "[t]he mental and physical health and integrity of all individuals involved." Our Supreme Court has addressed the comparative value of information relating to current fitness of a parent and information that reflects the parent's conduct more remote in time. *In Blankenship v. Brookshire*, 91 Idaho 317, 320, 420 P.2d 800, 804 (1966) the Court held:

> The court is concerned with the fitness of the natural parent at the time of the hearing as it relates to the welfare of the child. If a parent is, at the time the

question arises, a suitable person to have custody of the child, the court will not deny custody merely because sometime in the past the parent's conduct indicated a lack of integrity or responsibility.

This is not to say that the trial court must reject all evidence concerning past behavior. Some past behavior may be indicative of present parental fitness. As evidence goes back further in time—that is, becomes more remote—it is entitled to decreasing weight. At some point it becomes so remote that it no longer tends to make a fact "of consequence ... more probable or less probable" and, therefore, is inadmissible because it is not relevant under Idaho Rule of Evidence 401.

■ In the instant case, the record shows the trial court relied almost exclusively in its findings of fact upon evidence that was extremely remote in time and contained impermissible factors. A brief summary will illustrate the point. Of a total of twenty-four findings, seven deal with a property settlement not germane to the question before us. Three findings deal with jurisdictional and venue questions. Of the remaining fourteen findings, nine deal with events in Erin's first marriage, some three to seven years prior to the instant proceeding.

One finding (number 12) is a grammatical hodge-podge dealing with no less than eight separate findings. Although the wording declares a connection between past and present behavior, no factual connection is provided. There is reference to past lifestyle situations (pre-marital affairs and abortions) some seven to eight years earlier but no evidence to suggest such behavior is ongoing or has any effect upon the present relationship between Erin and the child in question here. The court also found that "[d]uring her early years [Erin] dabbled in drugs and alcohol." However, the evidence fails to suggest, and the court made no determination, of current usage of such substances and any effect upon the mother-child relationship. In short, finding number 12 is suspect and full of little more than speculation and innuendo. Absent any nexus between past conduct and present behavior on the mother-child relationship we must conclude the magistrate relied upon clearly impermissible factors. Further, the magistrate's findings focused heavily on a current relationship between Erin and one Swen Benson. The court found:

> The evidence at trial suggested that Plaintiff was involved with one, Swen Benson. The Court finds from the evidence that a significant relationship between Plaintiff and Swen Benson occurred, including Mr. Benson being at Plaintiff's apartment numerous times, being confronted by Defendant on a number of occasions and the evidence showing there were many nights that Plaintiff spent at her apartment with Swen Benson overnight. Mr. Benson was found by the Defendant hiding in Plaintiff's bathroom after the Defendant came to the apartment in January, 1985. In addition, the Court finds it significant that Mr. Benson remained in the Courtroom during all of the proceedings herein and showed significant interest in Plaintiff and she in him.

However, the finding fails to note that both Erin and Mr. Benson testified without refutation that they had never engaged in any sexual activities. Moreover, the findings failed to note that—as disclosed to the magistrate during the trial—Mr. Benson was present throughout the trial as a result of a subpoena served on him by Mr. Roeh's counsel.

In sum, the magistrate's findings failed to establish any nexus between the welfare of the child in question and the mother's relationship with Mr. Benson. The magistrate's exercise of discretion was tainted by the "Benson factor" when that factor was not shown to have any nexus with the child's best interests.

The record does contain substantial evidence that the mother, Erin, presen... leads a stable, temperate life and *all* witnesses testified to her present fitnes... a good mother. While we do not su... that findings or conclusions should i... evidence of past behavior, our concer... to the failure of the trial court in th...

to make a specific finding of fitness of the mother based upon present behavior in light of evidence to that effect.

The Alaska Supreme Court recently addressed an almost identical situation in *Craig v. McBride*, 639 P.2d 303 (1982). There the court said:

> [W]e cannot countenance the court's reference to the mother's sexual conduct. Whether intended as condemnatory of the mother's sexual conduct or only as indicative of the mother's unstable life style, our concern is that the mother's bearing of children out of wedlock or her instability in terms of relationships should be determinative only were such conduct to adversely affect the child or the mother's parenting abilities. As we stated in *Britt v. Britt*, "evidence of the life-style, habits, or character of a custody claimant is *relevant only to the extent that it may be shown to affect the person's relationship to the child.*" 567 P.2d 308, 311 (Alaska 1977). [Emphasis added.]

639 P.2d at 306.

In *McBride*, as in the instant case, the findings of fact were drafted by the father's counsel and signed by the court. The findings in *McBride* included references to the mother's past life-style and to the mother's "frequent moves and few ties," demonstrating "instability" on her part. The appellate court determined that reference "to the fact that the mother had borne children out of wedlock and demonstrated an instability in terms of relationships was improper. At best, such comments subjectively tainted the [trial] court's decision; at worst, they suggest that the court injected impermissible factors in the course of its deliberations." *Id.* at 305. Having concluded that the lower court let impermissible factors influence the custody determination, the Alaska Supreme Court reversed and remanded the case for redetermination of the custody issue. We find [its] analysis and approach persuasive.

[The] record in the instant case offers no [evidence] of any adverse effect resulting [from the] mother's past conduct. The [courts of] this state have long recognized

that a myriad of factors go into a determination of the best interests of the child. *Blankenship, supra,* at 320, 420 P.2d at 803. Past behavior is a piece to be sure, but a piece of equal value and not dispositive. Were it to be otherwise, there would be little incentive to improve one's parenting skills or ability. Given the utter lack of evidence in this case concerning present parental unfitness, we hold the magistrate relied upon impermissible factors in his fitness determination under I.C. § 32-717(5) and that he failed to make findings based on substantial evidence relevant to the best interests of the child. We conclude therefore that the decision of the magistrate court must be vacated and the matter remanded for redetermination of the custody question. We strongly urge the magistrate—in reaching a final decision in this case—to prepare appropriate findings of fact and conclusions of law without reliance upon counsel for the prevailing party. *See Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977).

## II

Our review of the judgment entered by the trial court reveals that the magistrate intermixed the concepts of "joint custody" and "primary physical custody," creating some confusion as to whether he properly applied I.C. § 32-717B, the statute addressing "joint custody." For guidance on remand, we believe a clarification is necessary. In determining the custody question, the trial court's judgment ordered:

> 2. That custody of the minor child of the parties, namely: Faith Lyn–Ann Roeh shall be awarded jointly to the parties hereto, with primary physical custody in the defendant, Robert Roeh, and subject to the rights of visitation in plaintiff as set forth here and above.

It appears that although joint custody is initially declared, "primary physical custody" is awarded to Mr. Roeh. We believe this pronouncement is inconsistent with I.C. § 32-717B. That statute provides:

> 32-717B—Joint Custody—(1) "Joint custody" means an order awarding cus-

tody of the minor child or children to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child or children of frequent and continuing contact with both parents. The court may award either joint physical custody or joint legal custody or both as between the parents or parties as the court determines is for the best interests of the minor child or children. If the court declines to enter an order awarding joint custody, the court shall state in its decision the reasons for denial of an award of joint custody.

(2) "Joint physical custody" means an order awarding each of the parents significant periods of time in which a child resides with or is under the care and supervision of each of the parents or parties.

Joint physical custody shall be shared by the parents in such a way to assure the child a frequent and continuing contact with both parents but does not necessarily mean the child's time with each parent should be exactly the same in length nor does it necessarily mean the child should be alternating back and forth over certain periods of time between each parent.

The actual amount of time with each parent shall be determined by the court.

(3) "Joint legal custody" means a judicial determination that the parents or parties are required to share the decision-making rights, responsibilities and authority relating to the health, education and general welfare of a child or children.

(4) Absent a preponderance of the evidence to the contrary, there shall be a presumption that joint custody is in the best interests of a minor child or children.

The language of the magistrate's order (quoted above) leads us to believe that "joint custody" was declared, invoking I.C. § 32–717B(1). The statute makes several options available to a judge. A judge may order "joint," "joint physical" or "joint legal" custody by applying the appropriate

subsection of I.C. § 32–717B. As is readily discernible, an award of "joint custody" alone encompasses both the physical and legal custody aspects of subsections (2) and (3). However, if a court determines to award either physical or legal custody solely to one parent, the court is required to state in its decision the reasons why the award is not for joint custody. In the instant case there is no judicial declaration of unfitness on the part of Erin. There is language in the court's findings and conclusions alluding to unfitness, but as previously discussed, that language is rife with references to irrelevant, nonpertinent facts. There is no declaration of unfitness utilizing pertinent facts under the "present behavior" or "nexus" requirements.

The magistrate's conclusions of law provide little guidance. The conclusions of law state:

> that it is in the best interest of the minor child, Faith Lyn–Ann Roeh, that her *legal custody* should be awarded jointly to the parties hereto with defendant, Robert Roeh, being awarded her *primary* physical custody, subject only to plaintiff's rights of visitation. [Emphasis added.]

This wording implicates subsection (3) of I.C. § 32–717B by creating "joint legal custody." While "joint legal custody" and "primary physical custody" are not inconsistent, again the determination to award primary physical custody to one parent instead of joint physical custody to both parents would require a statement of reasons therefor under I.C. § 32–717B(1).

Had the judgment included a determination of joint *legal* custody and primary *physical* custody, and also enunciated Erin's unfitness, the order may well have been a valid determination by the magistrate. Such was not the case. We are unable to gain further insight into the judicial reasoning involved since the decision was announced orally and off the record. On remand, the magistrate should render a determination that complies with, and is consistent with, the provisions of I.C. § 32–717B.

In summary, we affirm the district court's order vacating and remanding this

case to the magistrate for further proceedings. This is not to suggest that the magistrate need only rewrite the findings of fact, conclusions of law and judgment. Upon remand, the magistrate is empowered to take additional evidence relating to the present fitness of the parents in determining the custody issue. *Craig v. McBride, supra.* Costs to respondent, Erin Roeh. No attorney fees on appeal.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

I join the Court in upholding the district judge's decision to vacate the magistrate's judgment and to remand the case. However, I respectfully disagree with portions of the Court's analysis.

Part I of today's opinion correctly holds that a parent's conduct several years before a divorce should be considered in determining child custody only if there is a nexus between such conduct and the parent's current ability to serve the child's best interests. In this case the magistrate did not identify the nexus with sufficient clarity. Accordingly, I agree that a remand is required. However, I see no purpose in denigrating the grammar or structure of the magistrate's findings of fact and conclusions of law. Neither do I join the Court in condemning the magistrate's reliance upon "impermissible factors." The Court does not explain precisely what it means by this rigid, value-laden term. In my view, the magistrate should be guided by the flexible, value-neutral language found in Rule 401, I.R.E. The Rule defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, if evidence of a parent's prior conduct genuinely makes it more probable, or less probable, that he or she will serve the best interests of the child, then the evidence may be admitted and accorded appropriate weight in determining the custodial arrangement best suited to the child's needs.

Part II of the Court's opinion directs the magistrate to clarify his decision establishing joint legal custody but granting the father "primary physical custody subject only to [the mother's] rights of visitation." A clarification is necessary. However, the fault does not lie entirely with the magistrate. Rather, some confusion may be attributed to the governing statute, I.C. § 32–717B. This statute is quoted entirely in the lead opinion. At subsection (1) it contains an apparent ambiguity. It defines "joint custody" as an order which provides "that physical custody *shall* be shared by the parents...." (Emphasis added.) However, in the next sentence the subsection states that "the court *may* award either joint physical custody or joint legal custody or both...." (Emphasis added.) Today's opinion does not address this ambiguity but it offers a pragmatic interpretation of the statute. It holds that a joint custody decree may contain language vesting sole or "primary" physical custody in one parent, but that such language must be accompanied by an explanation for rejecting joint physical custody.

Had the opinion stopped there, I would have agreed with its treatment of the statute. However, the opinion goes on to say that the magistrate's decision in this case was deficient because it did not contain a finding of "unfitness" on the part of the mother. I find nothing in the statute which requires a magistrate to find one parent "unfit" as a requisite to vesting sole or primary physical custody in the other parent. Indeed, such a finding would be uncommon in a child custody dispute between two natural parents. A divorce is not a termination proceeding. Neither does Idaho have a "tender years doctrine" requiring a mother to be found "unfit" before custody of a young child may be given to the father. Rather, the magistrate's task simply is to decide what custody arrangement, involving two presumably "fit" parents, will serve the best interests of the child. The magistrate may receive evidence which falls short of showing parental "unfitness" but which indicates that one parent is comparatively better able

than the other to serve the child's needs in physical custody. This is sufficient. To require more—that is, to require a showing of parental "unfitness" in order to deviate from joint physical custody—is unsound as a matter of statutory construction and unwise as a matter of public policy.