# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39005

SUSAN CHRISTINE VIERSTRA, )
)
    Plaintiff-Appellant, )
)
v. )
)
MICHAEL GEORGE VIERSTRA, )
)
    Defendant-Respondent. )

Twin Falls, August 2012 Term

2012 Opinion No. 149

Filed: December 20, 2012

Stephen Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Michael R. Crabtree, District Judge. Hon. Howard Smyser, Magistrate Judge.

The decision of the district court is <u>affirmed</u> in part and <u>reversed</u> in part. The case is <u>remanded</u> to the district court with instructions to remand this case to the trial court for entry of an order consistent with this opinion.

Wright Brothers Law Office, PLLC, Twin Falls, for appellant. Tyler Rands argued.

Bevis, Thiry & Schindele, PA, Boise, for respondent. James Bevis argued.

---

HORTON, Justice.

This case arises from a divorce proceeding between Michael and Susan Vierstra. The magistrate court made a finding regarding the expected tax liability for 2009 when determining the value of the Vierstra family dairy. In its Judgment and Decree of Divorce, the magistrate court ordered the parties to adjust the valuations and equalizations according to the actual tax liability. After Susan objected to the form of the judgment, the magistrate court entered an Amended Judgment which did not alter the language regarding valuation of the dairy and the parties' obligation to adjust the valuations and equalizations. Because the actual tax liability for 2009 turned out to be much less than expected, Susan filed a motion seeking an adjustment of the equalization payment she was due. After receiving additional evidence, the magistrate court denied her motion. Susan then appealed from the Amended Judgment to the district court, asserting that the magistrate court erred in its valuation of the dairy and by denying her motion to

adjust the equalization payment. The district court dismissed the appeal, holding that Susan had not timely appealed from the judgment that determined the value of the dairy and that the magistrate court lacked jurisdiction to entertain her motion to adjust. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Susan and Michael were married in 1988. Susan filed for divorce from Michael in 2008. A trial was held over a five-day period in late 2009 and after receiving the parties' post-trial briefing, the magistrate judge issued his memorandum decision in early January, 2010. On January 25, 2010, the Judgment and Decree of Divorce (the Judgment) was filed. The family dairy operation was, by far, the largest community asset. As it was unclear to the magistrate court that either of the parties would be able secure the financing necessary to "buy out" the other spouse's interest in the dairy, the court determined that Susan would have the first option to receive the dairy in the distribution of community property and that if she received the dairy, she would be required to make an equalization payment to Michael. If Susan did not exercise that option or was unable to secure financing, Michael then had the option to receive the dairy and make an equalization payment to Susan. If neither party could secure the requisite financing, the dairy was to be sold and the net proceeds divided equally between the parties. Significantly, the trial court ordered that if either party received the dairy, then that party was required to pay 2009 taxes.

On February 8, 2010, Susan filed an Objection to the Form of the Judgment and Decree of Divorce (the Objection). On April 27, 2010, the magistrate court held a telephonic hearing on the Objection and effectively denied it, agreeing with Michael's attorney as to revisions that should be made to the language of the Judgment. On April 29, 2010, the trial court entered an Amended Judgment and Decree of Divorce (the Amended Judgment) that altered the Judgment by deleting unnecessary and repetitive provisions regarding child support and health insurance. The substance of these amendments is not pertinent to this appeal. The Amended Judgment retained the language of the Judgment with regard to the tax liability for the Vierstra dairy:

> The court finds the tax consequence to be incurred by Vierstra Dairy in 2009 is as is shown on Exhibit 801(A). The Court finds that it is more likely than not that Vierstra Dairy will incur the tax consequence. The party who receives the dairy will timely pay said taxes to the State of Idaho and the Internal Revenue Service. If no tax consequence occurs, or if the tax consequence is different from that shown in Exhibit 801(A), the parties shall adjust the valuations and equalizations

accordingly. If necessary, the parties can petition the court to address the adjustments. The court orders the parties to timely file tax returns and other filings concerning the Vierstra Dairy.

Exhibit 801A[1] reflected that the parties faced a tax liability of $1,006,000 for the dairy's operations. After Susan unsuccessfully attempted to exercise her option to receive the dairy, Michael successfully exercised his option.

On April 23, 2010, prior to the hearing on her Objection, Susan filed a motion asking the court to address the adjustments and equalizations (Motion to Adjust). This motion was based upon Susan's assertion that the parties paid a net sum of $85,036 in taxes for 2009, which was $920,964 less than the trial court had determined would be due. Consistent with the language of the judgment, Susan asked the court that Michael's equalization payment be increased by one-half that sum – $460,482.

Over Susan's objection, on May 12, 2010, the magistrate court conducted an evidentiary hearing on the Motion to Adjust.[2] On the subject of taxes, the uncontroverted testimony was that for tax year 2009, the community incurred a tax liability of $85,172 to the IRS and was due a refund of $340 from the state tax commission.

Each party presented additional testimony from experts who had testified at the earlier trial. This testimony related to the $1,006,000 figure adopted by the court. Michael's expert testified that the $1,006,000 that he had previously testified would be owed was not the expected tax liability for 2009. Rather, it reflected the amount of tax that would have been incurred had the dairy ceased operations. Michael's expert further opined that he expected that the $1,006,000 would be paid to the IRS within three years. Susan's expert testified that the $1,006,000 figure was speculative, because dairy operations utilizing the cash method of accounting have the ability to manage each year's tax liability by prepaying expenses and deferring income. Susan's expert pointed to the Vierstra dairy's history of managing tax liability in this fashion as reflecting this tax avoidance strategy.

---

[1] Exhibit 801A was not admitted at trial. Rather, it was attached to Michael's post-trial brief. Exhibit 801A references Exhibit 900 as to the amount of accumulated tax liability. Exhibit 900, which was admitted at trial, reflected a tax liability of $990,714. On the fourth day of trial, Michael presented testimony from Buckner Harris, a certified public accountant, that the tax liability for the dairy was $1,006,063. This testimony was consistent with Exhibit 900B, which was admitted without objection. Accordingly, we find that substantial and competent evidence supports the trial court's finding on this subject.

[2] We note that the record before this Court does not contain the exhibits admitted during the May 12, 2010, hearing. Significantly, these exhibits included the draft tax returns for 2009. The description of the facts relating to the actual 2009 tax liability has been gleaned from the two-volume transcript of that hearing.

Although no testimony was elicited as to whether Michael would be able to secure financing if he were required to pay the additional equalization payment requested by Susan, the trial court expressed concern as to his ability to do so.[3] In apparent response to the court's concerns, Michael's attorney argued that it was unlikely that Michael would be able to secure financing if he were required to make the larger equalization payment and that if Michael were unable to obtain a loan the dairy would have to be sold, which would be financially detrimental to both of the parties.

The magistrate court then denied Susan's Motion to Adjust. The trial court's ruling appears to have been driven by the desire to preserve Michael's ability to secure financing, thus avoiding the sale of the dairy and preserving both parties' economic interests:

> I've never thought, to be honest with you, that either party would be able to finance this. My guess was that it was going to up to a sale. That's after I heard the financial situations, how close we were on this, and I don't have these monies, but I think I can get that. It turns out that Mike Vierstra does have a chance to be able to finance this. The key ruling that I make today will determine, I suppose, whether that happens or not . . . I just don't [believe] that this thing [the tax liability] actually has a value of – of the One Million, so is it the Eighty Thousand or is it the One Million, because I have to pick one of the two and I honestly don't believe that either one of those numbers is what should be ordered by the Court, but that's the evidence I have been given. And so I'd say this folks. Based on the evidence, I think that the One Million better fits what's happening. I also think the parties are better protected by my ruling that way . . . I find that by the preponderance of the evidence, it's the One Million Dollars. I would also say this. By the choice I've made today, if I'm wrong on [*sic*] an appellate court will tell me and there will be Four Hundred Thousand Dollars more ordered down the road to be paid to Susan. If I'm right, then I made the right decision today and any appeals was [*sic*] wasted time. But the other thing that would happen is that if we sell it in today's market, I'm not too sure that either of these two people would serve by it. So if I'm wrong, I preserve Susan Vierstra's ability to get the sum- Four Hundred and Fifty thousand Dollars or – that she believes she is entitled to. If it goes out in the market today, they are going to incur that One Million Six- Six Thousand. It's – it's a guarantee because they're going to have to sell the dairy and – and so I am going to rule in essence in favor of Mike Vierstra, and the strangest of all things for me as a Judge, first time I've ever said this, I don't that [*sic*] either side gave me a number that I would play with on my own, but having to pick between the two, I'll pick the One Million, and I do that on the record I establish that I find that by a preponderance of the evidence that's what he's going to have on the business. It's more likely to be that than the Eighty Thousand. If I am dead wrong on this, the Court will tell me – and the ability to get the monies

---

[3] The trial court's concerns may have been well-grounded. However, the details of Michael's potential financing arrangement were presented in documentary form and are not part of our record.

- 4 -

that I have missed out on are still available to Susan Vierstra, so I don't think I have killed her claim. It doesn't matter which way I went. This is going to be appealed, but I'd really believe if I had to pick between the two, I think the One Million is how I would make my business decision, not on the Eighty Thousand. That's the way I would look at it an [*sic*] so that is how I rule today.

The trial court entered a written order denying the Motion to Adjust on May 18, 2010 (the Post-Trial Order). On June 10, 2010, Susan appealed from the Amended Judgment and the Post-Trial Order. After receiving oral argument from the parties, the district court entered an order *sua sponte*, directing the parties to submit supplemental briefing as to whether the district court had jurisdiction to address the appeal from the Amended Judgment and whether the magistrate court had jurisdiction to entertain the Motion to Adjust. The district court determined that it lacked jurisdiction to consider the appeal from the Amended Judgment, which attacked the trial court's finding of the amount of the tax liability. The district court found that it had jurisdiction to consider Susan's appeal from the Post-Trial Order. The district court then determined that the magistrate court lacked jurisdiction to enter the Post-Trial Order regarding the tax liability. Based upon these conclusions, the district court dismissed the appeal. Susan timely appealed to this Court.

## II. STANDARD OF REVIEW

In reviewing an appeal from a decision of the district court acting in its appellate capacity, this Court directly reviews the district court decision to determine whether it committed error with regard to the issues presented on appeal. *In re Daniel W.*, 145 Idaho 677, 679, 183 P.3d 765, 767 (2008) (citing *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)).

## III. ANALYSIS

Under our standard of review, we consider the two rulings of the district court on appeal from the magistrate division. We consider first whether the district court correctly determined that it lacked jurisdiction to entertain Susan's appeal from the Amended Judgment. We then consider the district court's decision regarding the Post-Trial Order. Finally, we consider the parties' requests for an award of attorney fees incurred on appeal.

**A. The district court correctly determined that it lacked jurisdiction to entertain Susan's appeal from the Amended Judgment.**

Susan's appeal from the Amended Judgment to the district court asserted that the magistrate court erred by finding that the parties' tax liability for the dairy operations was

$1,006,000. The district court determined that the appeal was untimely and therefore it lacked jurisdiction to address the merits of Susan's appeal.

Susan's briefing before this Court on this issue has focused upon the interpretation and application of the Idaho Appellate Rules. This focus was misplaced. Rule 83 of the Idaho Rules of Civil Procedure governs appeals from the magistrate division to the district courts of this state. I.R.C.P. 83(a) authorizes the appeal of a final judgment in the magistrate division to the district court. I.R.C.P. 83(e) provides that the appeal must be filed within 42 days after entry of the judgment, provided, however, that the time for appeal begins anew from the date an order is filed that grants or denies one of the following four post-trial motions, provided that the motion is timely made: (1) a motion for JNOV following a timely motion for a directed verdict; (2) a motion to amend or make additional findings of fact or conclusions of law, whether or not alteration of the judgment is required; (3) a motion to alter or amend the judgment (except motions under Rule 60 or motions regarding costs and attorney fees); and (4) a motion for new trial. The failure to timely file an appeal is jurisdictional and the appeal must be automatically dismissed, either upon motion of a party or *sua sponte* action by the district court. I.R.C.P. 83(s).

As she did before the district court, Susan contends that if the Judgment was a final judgment under I.R.C.P. 54(a), the time for appeal began to run anew after the magistrate court entered its order relating to the Objection. In this case, the Amended Judgment was the only order entered in response to the Objection. In the alternative, she argues that if the Judgment was not final, then her appeal from the Amended Judgment was timely. This requires us to first consider whether the Judgment was a final judgment under the version of I.R.C.P. 54(a) then in effect. We then consider whether the time in which Susan could appeal the magistrate court's finding as to the parties' tax liability was extended until the magistrate court entered its order on the Objection.

### 1. The Judgment was a final judgment for purposes of I.R.C.P. 54(a).

At the time the magistrate court entered the Judgment, I.R.C.P. 54(a) defined a final judgment as one that had been certified as final pursuant to I.R.C.P. 54(b)(1) or a judgment that resolved "all claims for relief except costs and fees, asserted by or against all parties in the action."

The Judgment was not certified by the trial court as final, so our inquiry is whether it resolved all claims advanced by Michael and Susan, or as we had previously explained, whether

the Judgment was entered as a separate document that "ends the lawsuit, adjudicates the subject matter of the controversy, and represents a final determination of the rights of the parties." *Camp v. East Fork Ditch Co.,* 137 Idaho 850, 867, 55 P.3d 304, 321 (2002) (citations omitted).

The Judgment was a separate document that addressed many of the claims between the parties, including dissolution of the marriage, child custody and support, the disposition of the community residence and the dairy, and a determination of the community tax liability. Apart from the dairy and residence, the Judgment does not specifically address the parties' separate property or community property and debt. However, the Judgment clearly manifests the intent to incorporate the magistrate court's memorandum decision, which contained findings relating to these subjects. We are unable to discern any claim between the parties that was not addressed by the Judgment, as supplemented by the incorporated memorandum decision. Thus, the Judgment was final and the time during which either party might appeal its terms began on January 25, 2010.

### 2. The magistrate court's ruling on Susan's Objection did not restart the clock for an appeal from the Judgment.

Susan contends that the time for her appeal began to run anew when the magistrate court entered an order on her Objection. Susan's Objection was filed on February 8, 2010 and was accompanied by her proposed form of judgment. The Objection simply stated: "The above-named Plaintiff objects to the form of the Judgment and Decree of Divorce submitted to the court by Defendant and filed on January 25, 2010." Susan did not explain the basis for the Objection until she filed a supporting memorandum on March 25, 2010, where she explained that the Judgment was not sufficiently concise and contained surplusage, as it referenced matters previously addressed in other orders.

After reviewing the proposed judgment that Susan submitted along with her Objection and reviewing the subsequent memorandum, we find it to be manifest that Susan's Objection was not (1) a motion for JNOV following a timely motion for a directed verdict, (2) a motion to amend or make additional findings of fact or conclusions of law, or (3) a motion for new trial. Rather, the Objection essentially suggested editing the Judgment, moving language relating to child custody and visitation from a parenting plan that was incorporated into the Judgment as an exhibit, substituting the parties' first names for "Plaintiff" and "Defendant," and by eliminating

language that did not directly address the relief ordered by the court.[4] Our inquiry is whether such an Objection constitutes a motion to alter or amend the judgment within the meaning of I.R.C.P. 59(e).

Rule 59(e) is terse: "A motion to alter or amend the judgment shall be served not later than fourteen (14) days after entry of the judgment." The rule does not explain what constitutes a motion to alter or amend. The Idaho Rules of Civil Procedure clearly reflect that not every proposed change to a judgment constitutes a motion to alter or amend, as I.R.C.P. 60(a) addresses correction of clerical errors in judgments upon motion of any party or the court.

This Court has explained that a Rule 59(e) motion to alter or amend provides the trial court with an opportunity to correct legal and factual errors. *Straub v. Smith*, 145 Idaho 65, 71, 175 P.3d 754, 760 (2007) (citing *Slaathaug v. Allstate Ins. Co.,* 132 Idaho 705, 707, 979 P.2d 107, 109 (1999)). In *Silsby v. Kepner*, 140 Idaho 410, 95 P.3d 28 (2004), this Court discussed the distinction between substantive motions and motions to address clerical matters:

> Rule 60(a) applies to those errors in which the "... type of mistake or omission [is] mechanical in nature which is apparent in the record and which does not involve a legal decision or judgment by an attorney. The clerical mistake under Rule 60(a) may be differentiated from the mistake or inadvertence referred to in Rule 60(b)(1), upon the ground that the latter applies primarily to errors or omissions committed by an attorney or by the court which are not apparent on the record." (citation omitted) *Dursteler v. Dursteler,* 112 Idaho 594, 597, 733 P.2d 815, 818 (Ct.App.1987). "Errors of a more substantial nature are to be corrected by a motion under Rules 59(e) or 60(b). Thus a motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." (citation omitted) *Dursteler,* 112 Idaho at 597, 733 P.2d at 818.

*Id*. at 411, 95 P.3d at 29.

This focus on the distinction between substantive objections and those directed to draftsmanship led the Court of Appeals to quote two federal courts that made the following observation:

---

[4] In her briefing before this Court, Susan asserts that her Objection "raised several issues with factual findings contained in the *Judgment*...." (emphasis in original). She does not identify those issues. The only statement regarding factual issues in her memorandum in support of the Objection is the following: "The Judgment and Decree of Divorce prepared by Defendant's attorney includes various statements of facts that for some reason Defendant determined were important to include in the final order." Susan made no further effort to identify the "various statements of facts" to which she objected. More significantly, she did not request the trial court to change any factual determination. Rather, her proposed substitute judgment simply omitted irrelevant factual statements contained in the Judgment.

> "[S]ubstance controls in determining whether a post-judgment motion is a Rule 59(e) or a Rule 60 motion." *Marane, Inc. v. McDonald's Corp.,* 755 F.2d 106, 111, n. 3 (7th Cir.1985), *quoting Bank of California, N.A. v. Arthur Andersen & Co.,* 709 F.2d 1174, 1176 (7th Cir.1983).

*Ade v. Batten*, 126 Idaho 114, 115 n.1, 878 P.2d 813, 814 n.1 (Ct. App. 1994). As this statement is consonant with this Court's characterization of the distinction between motions made pursuant to Rule 59(e) and Rule 60, we adopt this view. Susan's objections to the language contained in the Judgment challenged neither the trial court's factual findings nor its legal conclusions. Rather, the Objection was to draftsmanship, rather than substance. Accordingly, the district court properly determined that the Objection did not constitute a motion to alter or amend the judgment.[5]

The Objection was not one of the four classes of motions identified in I.R.C.P. 83(e) that would result in resetting the starting date for determination of a timely appeal. Therefore, the district court correctly held that the Objection could not serve as a basis for finding that Susan's appeal was timely.

### 3. The Amended Judgment did not extend the time for the parties to appeal.

Susan asserts that the district court erred by relying on *State v. Payan*, 128 Idaho 866, 920 P.2d 82 (Ct. App. 1996) and *State v. Ciccone*, 150 Idaho 305, 246 P.3d 958 (2010), when it determined that the entry of the Amended Judgment did not extend the time for appeal. She asserts that the district court "confused the rules regarding termination of the time for filing a notice of appeal in the criminal versus the civil context." We disagree.

In *Payan*, the Court of Appeals considered an appeal filed after entry of an amended judgment that added the credit for time served and did not otherwise change the terms of the original judgment. 128 Idaho at 867, 920 P.2d at 83. Payan's appeal did not challenge the district court's calculation of the time previously served. *Id*. Citing the interest in a uniform time for

---

[5] Susan relies on *Walton, Inc. v. Jensen*, 132 Idaho 716, 979 P.2d 118 (Ct. App. 1999) for the proposition that "objections to a judgment" result in termination of the 42-day period for filing a notice of appeal. This reliance is misplaced. Susan correctly quotes from that decision, including the statement that "[b]oth parties filed motions objecting to portions of the judgment." *Id*. at 719, 979 P.2d at 121. However, Susan failed to note that the parties in that action "both filed motions objecting to the damages award" and that both parties asserted that "the district court erred when it calculated damages." *Id*. at 718, 979 P.2d at 120. Clearly, such "objections" are substantive.

Susan's reliance on *Cecil v. Gagnebin*, 146 Idaho 714, 202 P.3d 1 (2009), is similarly misplaced. That case involved the trial court's judgment establishing the boundary between parcels owned by the parties. The motion to alter or amend the judgment asserted that the district court "incorrectly described the parties' common boundary." *Id*. at 716, 202 P.3d at 3. We can think of no substantive issue of greater importance than the description of a boundary in a case involving a boundary dispute.

appeals in this state, the Court held that the "issuance of an amended judgment, which did not alter any of the terms from which Payan now appeals, did not serve to extend the period for filing an appeal or begin that period anew." *Id.*

In *Ciccone*, this Court adopted the rule pronounced in *Payan*. 150 Idaho at 308, 246 P.3d at 961. Significantly, we quoted language employed in two federal decisions – one of them a civil case – and held: "We adopt the reasoning of these cases: when an amended judgment alters content other than the material terms from which a party may appeal, its entry does not serve to enlarge the time for appeal." *Id.* (citing *U.S. v. Lewis*, 921 F.2d 563, 565 (5th Cir.1991) and *First Nationwide Bank v. Summer House Joint Venture,* 902 F.2d 1197, 1200 (5th Cir.1990)). The Amended Judgment in this case did not alter the material terms from which the parties might have appealed and the entry of the Amended Judgment did not enlarge the time for Susan to appeal. We therefore affirm the district court's determination that Susan's appeal from the factual finding as to the amount of the parties' tax liability was untimely.

**B. The district court erred in its conclusion that the magistrate court lacked jurisdiction to entertain Susan's Motion to Adjust.**

The district court found that the trial court erred by creating "a procedure for post-judgment modification of the property division portions of the Judgment." To the extent that the district court held that the magistrate court erred by receiving evidence and making findings as to the appropriate valuation of the dairy, including evaluating the impact of its decision upon Michael's ability to secure financing, it did not err. This Court has previously held that a divorce decree is final and "no jurisdiction exists to modify property provisions of a divorce decree." *Borley v. Smith*, 149 Idaho 171, 178, 233 P.3d 102, 109 (2010) (quoting *McBride v. McBride,* 112 Idaho 959, 961, 739 P.2d 258, 260 (1987)).

However, this does not end the inquiry. Susan's initial brief on appeal complained that the trial court erred when it "*sua sponte* reconsidered its own decision and determined that it was adjusting the value of the Vierstra dairy despite its earlier decision to utilize only the 2009 tax returns of the parties." Susan's supplemental briefing on the issue of jurisdiction explained that her Motion to Adjust "sought simply to enforce the Magistrate's order contained in both the Judgment and the Amended Judgment." This position is consistent with Susan's objection to Michael's notice of intent to present evidence at the May 12, 2010, hearing, in which she argued that the magistrate court had already made its findings regarding the tax liability and that no

additional testimony was required. The district court's decision did not address Susan's contention that the Motion to Adjust was an action to enforce the Judgment.

Every court has the authority to enforce its orders as issued. *Id*. Idaho law provides that every court has the power to "compel obedience to its judgments, orders and process . . . ." I.C. § 1-1603(1); *see also* I.C. § 1-1901(2) (giving judicial officers power to compel obedience to lawful orders). Whether a court order is ambiguous is a question of law. *Suchan v. Suchan*, 113 Idaho 102, 106, 741 P.2d 1289, 1293 (1986). Interpretation of an unambiguous court order is also a question of law. *Id*.

Thus, we consider the language in the Judgment and Amended Judgment regarding the tax liability. As previously noted, the following language was left unchanged:

> The court finds the tax consequence to be incurred by Vierstra Dairy in 2009 is as is shown on Exhibit 801(A). The Court finds that it is more likely than not that Vierstra Dairy will incur the tax consequence. The party who receives the dairy will timely pay said taxes to the State of Idaho and the Internal Revenue Service. If no tax consequence occurs, or if the tax consequence is different from that shown in Exhibit 801(A), the parties shall adjust the valuations and equalizations accordingly. If necessary, the parties can petition the court to address the adjustments. The court orders the parties to timely file tax returns and other filings concerning the Vierstra Dairy.

The court's direction regarding the 2009 tax liability is not ambiguous. The party who received the dairy was obligated to pay the 2009 taxes to the State of Idaho and the Internal Revenue Service. If the tax liability differed from the projected $1,006,000, the parties were ordered to "adjust the valuations and equalizations accordingly." This mandatory language required the parties to adjust the equalization payments according to the actual 2009 tax liability incurred.

The district court focused on the following language from the paragraph addressing the parties' tax liability: "If necessary, the parties can petition the court to address the adjustments." The district court interpreted this as creating "a procedure for post-judgment modification of the property division portions of the Judgment." The district court's interpretation was undoubtedly influenced by the manner in which the trial court conducted the hearing on the Motion to Adjust, in which the magistrate court received evidence regarding the appropriate figure to attribute to the dairy for taxes and then denied the Motion to Adjust based upon concerns as to Michael's ability to secure financing.

In reaching its decision, the district court did not have the benefit of a recent decision from this Court in which we explained the degree of deference due a trial court's interpretation of its orders. In *Citizens Against Range Expansion v. Idaho Fish & Game Dept.*, No. 39297, 2012 WL 5519363, (Idaho Nov. 15, 2012), we explained that a trial court's interpretation of its orders will be given deference, but only to the extent that the interpretation is reasonable. *Id.* at *3-4. We find that interpreting the sentence authorizing the parties to petition the court as creating "a procedure for post-judgment modification of the property division" is manifestly unreasonable. Rather, in light of the mandatory language requiring the parties to adjust the equalization payments based upon the actual tax liability for 2009, the only reasonable construction of this sentence is as an express reservation of the trial court's authority to enforce its order regarding payment of taxes and equalization payments in the event that either party failed to comply with the orders contained within the Judgment.

The trial court clearly had the authority to receive evidence regarding enforcement of its earlier order. Thus, the trial court properly received evidence as to the actual tax liability incurred by the parties for 2009. That evidence showed that the parties incurred a net tax liability for 2009 of $84,832 ($85,172 owed to the IRS, less the $340 refund due from the state tax commission). Based upon the evidence presented to the magistrate court at the May 12, 2010 hearing, Susan was entitled to enforcement of the Amended Judgment by increasing the equalization payment due her by $460,584 (($1,006,000 - $84,832)/2).

Based upon the foregoing, we reverse the district court's decision holding that the magistrate court lacked jurisdiction to consider Susan's Motion to Adjust and remand with instructions to the district court to remand this case to the trial court for entry of an order adjusting the equalization payment due Susan in a manner consistent with this opinion.

**C. The parties' requests for an award of attorney fees will be denied.**

Both Michael and Susan request attorney fees on appeal pursuant to I.C. § 12-121. Because Michael has not prevailed in this appeal, he is not entitled to an award of attorney fees. *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 933, 277 P.3d 374, 380 (2012). In *Stonebrook*, this Court addressed the standard we apply when considering a request for attorney fees pursuant to I.C. § 12-121:

> Attorney fees on appeal may be awarded under I.C. § 12–121 "only if the appeal was brought or defended frivolously, unreasonably, or without foundation." *MBNA Am. Bank, N.A. v. McGoldrick,* 148 Idaho 56, 60, 218 P.3d 785, 789

(2008). Where there is "a legitimate, triable issue of fact or a legitimate issue of law, attorney fees may not be awarded." *Kiebert v. Goss,* 144 Idaho 225, 228, 159 P.3d 862, 865 (2007) (citing *Thomas v. Madsen,* 142 Idaho 635, 639, 132 P.3d 392, 396 (2006)).

*Id*. In view of the magistrate's approach to the Motion to Adjust, and considering that Michael correctly argued that Susan's appeal from the Judgment to the district court was untimely, we do not find that Michael has frivolously defended this appeal. For that reason, we deny Susan's request for attorney fees.

## IV. CONCLUSION

We affirm the decision of the district court in part, reverse in part, and remand to the district court with instructions to remand to the magistrate court for entry of an order on the Motion to Adjust consistent with this opinion. Costs, but not attorney fees, to Susan.

Justices EISMANN, J. JONES, W. JONES and Justice Pro Tem KIDWELL **CONCUR**.