**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52677**

| | |
|---|---|
| JONATHAN ATTAWAY, | ) |
| | ) **Filed:  July 21, 2025** |
| Petitioner-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| JADYN SANDMEYER, | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Kyle Schou, Magistrate.

Order granting petition to enforce parenting time and denying motion to reconsider, <u>reversed</u> and case <u>remanded</u>.

Ludwig, Shoufler, Miller, Johnson, LLP; Jordan S. Ipsen, Boise, for appellant.  Scot M. Ludwig argued.

Jolley& Jolley, PLC; Kyle A. Engels, Boise, for respondent.   Kyle A. Engels argued.

_____

GRATTON, Chief Judge

Jadyn Sandmeyer appeals from the magistrate court's order granting the petition to enforce parenting time and denying her motion to reconsider.  We reverse and remand to the magistrate court.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a dispute over the interpretation and enforcement of a stipulated judgment entered in August 2024.  The parties, Jonathan Attaway and Jadyn Sandmeyer, were never married and share a minor child, J.A.  The stipulated judgment established joint legal and physical custody of J.A. with primary custody vested in Sandmeyer.  Paragraph 2 of the stipulated judgment sets out a custody arrangement to allow Attaway parenting time.  Paragraph 4 addresses the circumstance if Sandmeyer moves out of state: "In the event [Sandmeyer] relocates outside of

1

the State of Idaho with the minor child, [Attaway] shall have parenting time as follows." The rest of paragraph 4 sets out an alternate set of custody terms in the event Sandmeyer moves out of state. Paragraph 5 addresses the circumstance if either of the parties relocates within the state: "The parties shall be entitled to reside anywhere within the State of Idaho. In the event one party moves a distance greater than 30 miles, the parties shall meet at a neutral half-way location for all custodial exchanges."

In September 2024, Sandmeyer relocated to Texas with J.A. In response, Attaway filed a petition to enforce parenting time, requesting J.A.'s immediate return to Idaho. The magistrate court held a hearing and ordered J.A.'s return within thirty days, finding that the stipulated judgment did not permit Sandmeyer to unilaterally relocate the child out of state. Sandmeyer subsequently filed a motion to reconsider, arguing that the stipulated judgment allowed her to relocate without first obtaining permission from Attaway (or the magistrate court). The magistrate court denied the motion to reconsider and reaffirmed that J.A. must be returned to Idaho. Sandmeyer filed this permissive appeal pursuant to Idaho Appellate Rule 12.1.

## II.

## STANDARD OF REVIEW

In a permissive appeal under I.A.R. 12.1, appellate courts review the magistrate court's decision without the benefit of a district court appellate decision. *Lamont v. Lamont*, 158 Idaho 353, 356, 347 P.3d 645, 648 (2015). When deciding the motion for reconsideration, the magistrate court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered. In other words, if the original order was a matter within the trial court's discretion, then so is the decision to grant or deny the motion for reconsideration. If the original order was governed by a different standard, then that standard applies to the motion for reconsideration. Likewise, when reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration. If the decision was within the trial court's discretion, we apply an abuse of discretion standard. *Westover v. Idaho Counties Risk Management Program*, 164 Idaho 385, 391, 430 P.3d 1284, 1290 (2018).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently

2

with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Over questions of law, we exercise free review. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992); *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

## III.

## ANALYSIS

Both parties argue that the stipulated judgment is unambiguous. Sandmeyer argues that the language in paragraph 4 of the stipulated judgment does not require permission from Attaway or the magistrate court to move out of the state and the magistrate court erred in concluding otherwise. Attaway argues that by paragraph 4 "omitting any language permitting out-of-state relocation," but explicitly permitting an in-state move in paragraph 5, the stipulated judgment "inherently prohibits such a move [out of state]." Sandmeyer alternatively argues that if the stipulated judgment is ambiguous, the magistrate court abused its discretion by excluding extrinsic evidence.

### A.    Ambiguity and Interpretation

Paragraph 4 of the stipulated judgment states:

In the event [Sandmeyer] relocates outside of the State of Idaho with the minor child, [Attaway] shall have parenting time as follows:

    (a)    When [J.A.] begins school, [Attaway] shall be entitled to have physical custody of [J.A.] beginning July 1st of that Summer until one week before [J.A.] begins school;

    (b)    In the event [Sandmeyer] is visiting the State of Idaho during the time-frame outlined in paragraph 4(a), she shall be entitled to the right of first refusal to care for [J.A.] if [Attaway] will be away from [J.A.] for a time frame greater than three (3) hours;

    (c)    The parties shall alternate custody of [J.A.] during Winter/Christmas break with [Attaway] having parenting time during the even years and [Sandmeyer] having parenting time during the odd years;

    (d)    The parties shall alternate custody of [J.A.] during Spring break with [Attaway] having parenting time during the odd years and [Sandmeyer] having parenting time during the even years.

Further:

    (e)    [Sandmeyer] shall have primary physical custody of [J.A.];

    (f)    Neither party shall pay Child Support;

     (g)     [Attaway] shall be entitled to claim [J.A.] as a dependent for State and Federal income tax purposes for every year as long as [Sandmeyer] resides outside the State of Idaho;

     (h)     [Sandmeyer] shall be responsible for all travel expenses for [J.A.] to visit with [Attaway];

     (i)     [Attaway] shall be entitled to have FaceTime or phone calls with [J.A.] at least once per day.

Paragraph 5 of the stipulated judgment states:

The parties shall be entitled to reside anywhere within the State of Idaho. In the event one party moves a distance greater than 30 miles, the parties shall meet at a neutral half-way location for all custodial exchanges.

Whether a court order or judgment is ambiguous is a question of law. *Vierstra v. Vierstra*, 153 Idaho 873, 880, 292 P.3d 264, 271 (2012). If the language of the decree is unambiguous, the determination of its meaning and legal effect is a question of law over which free review is exercised and matters outside the record should not be used to construe it. *McKoon v. Hathaway*, 146 Idaho 106, 109, 190 P.3d 925, 928 (Ct. App. 2008). If, on the other hand, the language of the decree is reasonably susceptible to conflicting interpretations, it is considered ambiguous, and the determination of its meaning is a question of fact. *Toyoma v. Toyoma*, 129 Idaho 142, 144, 922 P.2d 1068, 1070 (1996).

The interpretation of decrees or judgments is generally subject to the same rules applicable to construction of contracts. *Id*. Such interpretation must begin with the literal words; those words must be given their plain, usual, and ordinary meaning; and the statute, contract, or judgment must be construed as a whole. *See Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011).

Sandmeyer argues that the plain language of paragraph 4 does not require permission or consent from Attaway or the magistrate court for Sandmeyer's relocation outside of Idaho. Reading paragraph 4 in isolation, we agree that nothing in the plain language of paragraph 4 provides that Sandmeyer must seek permission.

However, the magistrate court, read the stipulated judgment as a whole and determined that the provision in paragraph 5 that the parties "shall be entitled to reside anywhere within the State of Idaho" granted express permission for either party's relocation within the state. Because paragraph 4 contains no such language, the magistrate court concluded there was no express permission for Sandmeyer's out-of-state move without prior approval. Attaway argues that the magistrate court correctly concluded the additional language in paragraph 5 "inherently prohibits

4

such a move" out of state, without consent.[1]  Otherwise, according to Attaway, the language in paragraph 5 "would serve no purpose and be rendered meaningless."  Sandmeyer contends that the magistrate court erred in reading paragraph 5 to inform whether paragraph 4 requires consent prior to relocation.  Sandmeyer asserts that the stipulated terms in paragraphs 4 and 5 address separate circumstances, and paragraph 4 is specific to Sandmeyer and the initial language in paragraph 5 does not relate to paragraph 4.  Sandmeyer argues the fact that paragraph 5 includes a permissive first sentence before describing what would occur "in the event" of the in-state move does not show that permission is required for an out-of-state move in paragraph 4.  Specifically, Sandmeyer argues that the language "in the event" in paragraph 4 inherently contains permission and automatically triggers the subsequently stated conditions.  By way of example, Sandmeyer notes that the stipulated judgment employs the "in the event" language elsewhere and in those provisions, the subsequent event, is not conditioned upon permission or further court order.  Finally, Sandmeyer argues that the terms of paragraph 4 would be illusory or no more than an agreement to agree if permission were required because such permission could be conditioned on modification of the agreed custodial and financial terms.

The "in the event" language in contracts or judgments generally specifies subsequent actions or consequences that will occur if a particular predicate event or condition arises.  Because the predicate event is an event the parties have agreed will or is likely to occur, the "in the event" language is used to preclude further action or agreement as to the subsequent event or consequence if the predicate event occurs.  Simply put, it is not a question of whether the predicate event might arise.  Instead, it is an agreement that when the predicate event occurs, then the agreed-upon subsequent situation also occurs.  Thus, the phrase "in the event" does not contemplate permission or satisfaction of any predicate condition for the subsequent result to occur.

In *Tolley v. THI Company*, 140 Idaho 253, 92 P.3d 503 (2003), Tolley challenged a contract provision which provided for disposition of corporate shares "in the event" of divorce.  The Supreme Court found the provision unambiguous in its meaning or in delineating the rights and obligations occurring upon divorce.  *Id.* at 260, 92 Idaho at 510.  The Court rejected Tolley's claim

---

[1]  Attaway argues that interpreting the stipulated judgment to permit Sandmeyer's move out of state would lead to an absurd result because under the terms, Attaway would have no custodial time until J.A. starts school, a period of approximately two years.  The custodial terms are not at issue and do relate to the issue of whether permission to move out of state is required.

that the terms should have been explained, as the consequence of the "in the event of divorce" language was unambiguous. *Id*. at 261-62, 92 P.3d at 511-12.

In the stipulated judgment in this case, the "in the event" language also appears in paragraph 10, which provides: "In the event [Attaway] needs child care, [Sandmeyer] shall have the right of first refusal to care for [child] if [Attaway] will be away from [child] for a time frame greater than three (3) hours." Again, the parties identified a predicate event and an agreed upon consequence or subsequent situation at such time as the predicate event occurs. The consequence, the right of first refusal, automatically springs from the occurrence of the event, Attaway's need for childcare when he will be away from the child for more than three hours. Attaway makes no claim that there is a precondition to the event described in paragraph 10 or that the first sentence in paragraph 5 implies that the "in the event" language in paragraph 10 contemplates further agreement or court order. Paragraph 10 contemplates no permission or court order for Sandmeyer's right of first refusal to arise or for exercise thereof upon occurrence of the predicate event. Thus, reading the stipulated judgment as a whole, there is nothing in paragraphs 4, 5, and 10 that inserts a precondition to the predicate event, or the consequences triggered as a result of that event.

Given the above conclusion, we further conclude that paragraphs 4 and 5 address separate circumstances. Paragraph 4 provides for a potential relocation outside of Idaho, specific to Sandmeyer and accommodates that relocation with an alternative custody arrangement. Paragraph 5 provides for a condition wherein the parties must establish a half-way point for custody exchanges should they move greater than thirty miles within Idaho. Neither of these terms conflict with one another and do not relate to each other.

Looking at the stipulated judgment as a whole, we cannot say the language is ambiguous. However, the magistrate court's interpretation was incorrect as a matter of law because the stipulated judgment does not require Sandmeyer to seek permission prior to relocating out of state because the plain language is devoid of any provision that establishes such a requirement. The parties, in paragraph 4, provided solely for Sandmeyer's move out of state. Because paragraph 5 does not relate to or conflict with paragraph 4, the magistrate court erred in finding the language of paragraph 5 controlled the interpretation of paragraph 4.

Sandmeyer argues that it makes no sense to include a detailed custody schedule and altered financial terms in the event of her move out of state if it is just an "agreement to agree" or

hypothetical future agreement. We agree that if consent were required from Attaway, there is nothing in the stipulated judgment providing the criteria for granting or withholding consent. The paragraph 4 schedule would be meaningless as Attaway could refuse, make his consent contingent on an entirely different schedule, and/or demand other concessions or terms.

Finally, we agree with Sandmeyer that paragraph 4 would not exist if the parties did not anticipate a potential out-of-state move by Sandmeyer. Consequently, there was no need to include language, as in paragraph 5, that specifically acknowledges both party's potential move within the state. Contrary to Attaway's claim, the language in paragraph 5 is not rendered meaningless if paragraph 4 permits Sandmeyer to move out of state. In addition, Attaway agreed to specific terms beneficial to himself, in the event Sandmeyer moved out of state. Sandmeyer agreed to waive Attaway's unpaid back child support, the parties would deviate from the Idaho Child Support Guidelines, and Attaway would pay a lesser amount of support under the Guidelines until Sandmeyer moved. Once she did so, child support would be waived entirely and Attaway would receive the child tax credits.

We note that there was no express determination of the best interests of the child in conjunction with entry of the stipulated judgment. In Sandmeyer's motion for reconsideration Sandmeyer argued that the magistrate court's reading of the stipulated judgment to restrict her move out of state violated her constitutional right to travel. In the magistrate court's oral ruling denying Sandmeyer's motion for reconsideration, the magistrate court stated that the best interests of the child can take priority over the right to travel, and a restriction on travel represents the parties' agreement that as to the best interests of the child. In its written order denying the motion for reconsideration, again addressing the constitutional right to travel, the magistrate court stated, "The Court tends to defer to parents in determining what schedule is in their child's best interest; they are the ones who interact with the child daily; they are the ones who love their child." The magistrate court continued: "at no point has the Court been asked to weigh in on whether a move would be in the parties' minor child's best interest; the Court was simply asked to endorse the parties' determination of what was best for their child." The magistrate court's deference to the parties' determination of the child's best interest applies to our interpretation of the stipulated judgment to allow the out-of-state move by Sandmeyer. Sandmeyer moved out of state within one month of the entry of the stipulated judgment. Attaway points to no change in circumstance affecting the best interests of the child during that one month.

7

In determining custody, whether in the initial divorce decree or a subsequent modification, the welfare and best interests of the child are of paramount importance. *Silva v. Silva*, 142 Idaho 900, 904, 136 P.3d 371, 375 (Ct. App. 2006); *Roeh v. Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct. App. 1987). The best interests of the child standard governs relocation decisions. *Bartosz v. Jones*, 146 Idaho 449, 456-57, 197 P.3d 310, 317-18 (2008). While the issue is not before us, we note that a self-executing change of custody/visitation, here through employment of the "in the event" language, may implicate the best interests of the child analysis, particularly when measured not by the date of the stipulated agreement, but by the circumstances existing at the time the event arises. *C.f.*, *Johnson v. Johnson*, 290 Ga. 359, 360, 721 S.E.2d 92 (2021).

The stipulated judgment's plain language allows Sandmeyer to move out of Idaho and accommodates such a move with an alternative custody arrangement. Therefore, the magistrate court's interpretation was in error as a matter of law.[2]

## B.     Attorney Fees and Costs on Appeal

Both parties seek an award of attorney fees on appeal pursuant to Idaho Code § 12-121. An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. Because Sandmeyer and Attaway each presented reasonable arguments over a legitimate issue of law pertaining to the stipulated judgment, we decline to award attorney fees to either party under I.C. § 12-121. However, because Sandmeyer prevailed on the dispositive issue on appeal, she is entitled to costs as a matter of right. I.A.R. 41.

## IV.

## CONCLUSION

The magistrate court's order granting Attaway's verified petition to enforce parenting time and the order denying Sandmeyer's motion for reconsideration are reversed and the case is remanded to the magistrate court. Costs are awarded to Sandmeyer.

Judge HUSKEY and Judge TRIBE **CONCUR**.

---

[2]     Sandmeyer requests that, in the event this Court deems the stipulated judgment ambiguous, we remand to the magistrate court and order assignment of a different magistrate. We have not determined the stipulated judgment to be ambiguous and see no basis to order assignment to a different magistrate upon remand.