**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 47099**

| | | |
|---|---|---|
| **DONNA O. GRIFFITHS,** | ) | |
| | ) | |
| **Plaintiff-Appellant-** | ) | |
| **Cross Respondent,** | ) | **Boise, June 2020 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: August 5, 2020** |
| | ) | |
| **STAN REED GRIFFITHS,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Respondent-** | ) | |
| **Cross Appellant.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Michelle Radford Mallard, Magistrate Judge. Bruce L. Pickett, District Judge.

The decisions of the district court are <u>affirmed</u> in part, <u>reversed</u> in part, and the case is <u>remanded</u> for further proceedings.

David A. Johnson, P.A., Idaho Falls, for appellant.

Nalder & Blake, PLLC, Idaho Falls, for respondent.

_____

BRODY, Justice.

This appeal arises from a divorce between Stan and Donna Griffiths. Donna appeals the Bonneville County district court's decisions: (1) denying her motion to dismiss Stan's appeal; and (2) reversing in part and affirming in part the magistrate court's division of the marital estate. On appeal, Donna argues that the district court erred in denying her motion to dismiss Stan's intermediate appeal pursuant to the acceptance of the benefits doctrine. Donna further argues that the district court erred in reversing several of the magistrate court's rulings, including its valuation of hospital ownership shares, its award of an equalization payment to Donna, and its award of spousal maintenance to Donna. Stan cross-appealed, arguing that the district court erred in affirming the magistrate court's admission of expert testimony and unequal division of marital

property. For the reasons stated below, we affirm in part, reverse in part, and remand the case for further proceedings.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Stan and Donna were married on August 25, 1978. They raised three children during their marriage, all of whom are now adults. At the time of their divorce in 2015, both parties were 57 years old.

Stan is an orthopedic surgeon and has been practicing since 1989. Stan and two other physicians own their own medical practice, Summit Orthopedics Management and Consulting, LLC (SOM). Through his medical practice, Stan also holds a full or partial ownership interest in five other medical entities. At the time of divorce, Stan did not know how much longer he would continue working before retirement. While the divorce was pending, Stan had neck surgery to address a recent injury. Stan continued working after surgery.

Donna has not worked since the first year of her marriage in 1979. Since then, she managed the household as a homemaker. During their marriage, the parties never discussed or considered Donna returning to work. Donna believes that she could get a job "if she needed to," but would not be qualified for anything over minimum-wage.

Stan controlled the parties' finances during the marriage. Stan budgeted Donna either $4,500 or $6,500 a month for household bills. Further, Stan controlled a majority of the bank accounts and investments made during the marriage.

The parties' investment in Mountain View Hospital (MVH) is the dominant issue in their divorce. At the time of their divorce, the parties held two types of ownership units in MVH: (1) 252 Class A units; and (2) 360 Class RE units. MVH is physician-owned and restricts its ownership units to Idaho licensed physicians with privileges to practice medicine at MVH. Because of the ownership restrictions, the units must be held in Stan's name. Additionally, the ownership restrictions mean that the MVH units must be sold upon Stan's retirement. The parties' MVH units proved to be a lucrative investment. For example, in 2014, the parties' MVH units produced an income of $538,226. Stan and the two other physicians that make up SOM formed Summit Orthopedic Equity, LLC (SOE) to collectively own additional Class A and RE MVH units.

On October 24, 2013, after more than thirty-five years of marriage, Donna filed for divorce on the grounds of irreconcilable differences. Donna requested an unequal division of community

2

property in her favor and a spousal maintenance award. Stan agreed to the grounds for divorce, but contested an unequal division of community property.

Prior to trial, in violation of the magistrate court's temporary restraining order, Stan sold approximately $900,000 worth of MVH units without telling Donna, the magistrate court, or the parties' attorneys. Stan did not produce any written record of the sale or disbursement of the proceeds. He later testified that he deposited the proceeds into a bank account that was included in the parties' marital property division.

Trial commenced on June 2, 2015. Valuation of the MVH Class A units was hotly contested. Donna called Keith Pinkerton as an expert witness to testify on the valuation of parties' business entities, including the MVH units. Pinkerton was the only expert from either party to testify to valuation. Over Stan's objection, Donna also called Diane Barker as an expert in divorce financial planning to demonstrate how different marital property divisions would affect the net worth of the parties over time. Stan called Kevin Oakey as a tax expert to testify to the tax burdens associated with dividing the parties' business entities and investments. Donna later called Jason Coles as a tax expert to rebut Oakey's testimony. New information regarding the parties' finances came to light during the trial, requiring the magistrate court to set a final day of trial in July 2015.

Before the trial concluded, the magistrate court entered a stipulated divorce decree. The stipulated divorce decree divided the martial property that the parties reached an agreement on, and postponed judgment on a valuation and division of the parties' business entities.

After trial, the magistrate court entered its findings of fact and conclusions of law, along with a memorandum decision. In its memorandum decision, the magistrate court reached five conclusions relevant to this appeal: (1) the MVH Class A units were valued at $9,191 per unit, which was higher than Pinkerton's expert opinion of $8,272 per unit; (2) Oakey's opinion on the MVH units' after-tax value was rejected; (3) Donna was awarded an unequal division of the community property, receiving 60% of the community property; (4) to achieve the unequal community property division, the magistrate court ordered Stan to pay Donna a $2,107,440 equalization payment no less than one year from the magistrate court's judgment; and (5) Donna was awarded $4,500 a month in spousal maintenance until Donna reached age 62. Overall, the magistrate court's community property division awarded most of the parties' liquidity and cash accounts to Donna, and awarded Stan all of the medical practice entities, including all of the MVH Class A and RE units. After the magistrate court entered judgment, Stan appealed the magistrate

court's findings, conclusions, and judgment to the district court, raising twenty-one issues on appeal.

Subsequently, the district court issued an order staying execution of the judgment pending appeal. The stay order required Stan to continue paying Donna $4,500 a month in spousal support, and allowed the parties to retain possession of the homes and real property awarded to them. Further, the stay order appointed a receiver to collect distributions from the MVH units while the appeal was pending and to provide quarterly accounting of the parties' financial activities.

While the appeal was pending, Donna filed an amended motion to dismiss the appeal. In her motion, Donna argued that Stan "accepted the benefits" of the judgment by: (1) retaining $133,139 in MVH distributions after judgment was entered that he did not turn over to the receiver; (2) retaining $40,140.86 in distributions during the pendency of appeal that he did not turn over to the receiver; (3) spending $46,937.20 on renovations to the home he was awarded in the judgment; and (4) transferring $106,666.67 in MVH distribution from SOE to SOM rather than to the receiver. As such, Donna argued that Stan's appeal should be dismissed pursuant to the "acceptance of the benefits doctrine." The district court denied the motion, concluding that although Stan accepted some benefits of the judgment, the acceptance of the benefits doctrine did not apply to prevent Stan's appeal.

The district court issued a memorandum decision on Stan's appeal, reversing in part and affirming in part the rulings of the magistrate court. The reversed rulings included: (1) the magistrate court's valuation of the MVH Class A and RE units; (2) its decision to reject the after-tax value of the MVH units; (3) the equalization payment; and (4) Donna's spousal maintenance award. The district court affirmed the admission of Barker's expert testimony and the unequal division of community property. Donna timely appealed, and Stan subsequently filed a cross-appeal.

## II.    STANDARD OF REVIEW

When reviewing the decision of a district court sitting in its capacity as an appellate court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

4

*In re Estate of Brown*, 166 Idaho 472, 476, 461 P.3d 754, 758 (2020) (quoting *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)). "Thus, this Court does not review the decision of the magistrate court." *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013). "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.'" *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009)).

## III.    ANALYSIS

### A. The district court did not err in denying Donna's motion to dismiss the appeal pursuant to the acceptance of the benefits doctrine.

The district court denied Donna's motion to dismiss Stan's appeal. The district court recognized that Idaho has adhered to the acceptance of the benefits doctrine since this Court's decision in *Bechtel v. Evans*, 10 Idaho 147, 77 P. 212 (1904). *Bechtel* defined the doctrine as follows: "If the party has collected his judgment, and, in seeking to gain more by the prosecution of an appeal, thereby incurs the hazard of eventually recovering less, then his appeal should be dismissed." *Id.* at 150, 77 P. at 213. However, the district court concluded that subsequent case law relaxed *Bechtel*'s strict standard. Further, because the acceptance of the benefits doctrine is grounded in equity and similar to the doctrine of quasi-estoppel, the district court adopted the requirement of quasi estoppel that a party must be unfairly prejudiced or disadvantaged for the doctrine to apply. In its application of the doctrine, the district court concluded that Stan accepted the benefits of the magistrate court's judgment in paying for home renovations and receiving MVH distributions, but held that the acceptance of the benefits doctrine did not apply because Donna failed to demonstrate that she was unfairly prejudiced or disadvantaged by Stan accepting these benefits. Additionally, the district court held that Stan did not accept benefits for the purposes of the acceptance of the benefits doctrine where he used MVH distributions to pay taxes and where Stan's business entity, SOM, received MVH distributions rather than himself personally.

1. Idaho's acceptance of the benefits doctrine: the *Bechtel* rule.

Idaho adopted the acceptance of the benefits doctrine in *Bechtel v. Evans*, 10 Idaho 147, 77 P. 212 (1904):

> If the party has collected his judgment, and, in seeking to gain more by the prosecution of an appeal, thereby incurs the hazard of eventually recovering less, then his appeal should be dismissed. If, on the other hand, the appeal is from such an order or judgment as that he could in no event recover a less favorable judgment, and that he incurs no hazard of ever receiving less than the judgment already collected by him, we see no objection to the prosecution of his appeal.

*Id.* at 150, 77 P. at 213. The purpose behind the doctrine is to prevent "a plaintiff from prosecuting an appeal which, if successful, might result in a reduced recovery." *Basic Am., Inc. v. Shatila*, 133 Idaho 726, 745, 992 P.2d 175, 194 (1999). Put differently, the doctrine is intended to prevent a situation where the appellate court would find that the appellant was not entitled to an amount already received. *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 887 (Colo. 2002).

*Bechtel* is still good law in Idaho, and subsequent cases have affirmed *Bechtel*'s pronouncement of the acceptance of the benefits doctrine. *Basic Am.*, 133 Idaho at 745, 992 P.2d at 194 (referring to "the *Bechtel* rule" when analyzing the acceptance of the benefits doctrine); *see also Stockyards Nat'l Bank of Chicago v. Arthur*, 45 Idaho 333, 339, 262 P. 510, 512 (1927) (analyzing "the rule laid down in the Bechtel [sic] [c]ase"). Idaho also recognizes, however, that the doctrine does not apply where the benefits accepted are separate and distinct from the benefits disputed on appeal. *Burnham v. Bray*, 104 Idaho 550, 553, 661 P.2d 335, 338 (Ct. App. 1983). In other words, an exception applies where the appealing party would be entitled to the benefits regardless of the outcome on appeal. *See id.*

The acceptance of the benefits doctrine is often compared to other equity-based legal doctrines, such as the doctrine of quasi-estoppel. In *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 874 P.2d 520 (1994), this Court analyzed the issue of quasi-estoppel, and stated that "[t]he doctrine of quasi-estoppel has its basis in acceptance of the benefits; it precludes a party from asserting to another's disadvantage a right inconsistent with a position previously taken by him or her." *Id.* at 715, 874 P.2d at 526; *see also Alpine Vill. Co. v. City of McCall*, 154 Idaho 930, 937, 303 P.3d 617, 624 (analyzing an estoppel issue and comparing it to the acceptance of the benefits doctrine). Because the doctrine is anchored in equity, some courts have altered or relaxed the acceptance of the benefits doctrine by adding the quasi-estoppel requirement: that the opposing party must be disadvantaged or prejudiced to prevent another party's appeal. *Kramer v. Kastleman*, 508 S.W.3d 211, 227 (Tx. 2017) ("Thus, before denying a merits-based resolution to a dispute, courts must evaluate . . . whether the opposing party will be unfairly prejudiced.").

Importantly, this Court has not previously imposed a prejudice or disadvantage requirement on the acceptance of the benefits doctrine. Thus, as it stands today, the *Bechtel* rule does not include a requirement that the opposing party be prejudiced to assert the acceptance of the benefits doctrine. In fact, since *Bechtel*, the three cases that have squarely addressed the acceptance of the benefits doctrine did not alter *Bechtel*'s core rule. *See Basic Am.*, 133 Idaho at

745, 992 P.2d at 194; *Arthur*, 45 Idaho at 339, 262 P. at 512; *Burnham*, 104 Idaho at 553, 661 P.2d at 338. While *Burnham* adopted an exception to the rule—where the benefits accepted are separate from the benefits disputed on appeal—it did not add a prejudice requirement. 104 Idaho at 553, 661 P.2d at 338.

Additionally, although quasi-estoppel and the acceptance of the benefits doctrine are both anchored in equity, they are separate doctrines. Quasi-estoppel precludes a party from asserting to another's disadvantage a right inconsistent with a *position previously taken*, and applies where it would be unconscionable to allow a person to *maintain such an inconsistent position* with one in which he previously benefited. *Alpine Vill. Co.*, 154 Idaho at 937, 303 P.3d at 624. The acceptance of the benefits doctrine merely examines whether a party appeals the benefits of an accepted judgment, and does not examine whether the appellant's *position* was consistent on appeal. *See Basic Am.*, 133 Idaho at 745, 992 P.2d at 194. Accordingly, the *Bechtel* rule is still good law in Idaho, and it does not impose the same prejudice requirement associated with other equity-based legal doctrines.

2. The *Bechtel* rule does not apply to preclude Stan's appeal.

Applied to this case, the *Bechtel* rule asks whether Stan could end up with a reduced recovery in prosecuting his appeal. *Basic Am.*, 133 Idaho at 745, 992 P.2d at 194. Donna asserts that Stan accepted the benefits of the magistrate court's judgment in four instances: (1) by renovating the marital home that he was awarded; (2) accepting $133,139.00 in MVH distributions; (3) using MVH distributions to pay taxes; and (4) diverting MVH distributions from SOE to SOM rather than adding them to his personal bank account or transferring them to the receiver. Donna argues that Stan could have a reduced recovery on remand because Stan challenges the MVH Class A units' valuation on appeal. Donna argues that if the MVH units' valuation is reduced on remand, the entire property award could be reshuffled, leading to reduced recovery for Stan. Additionally, Donna argues that on remand, the magistrate court may order a new trial on all or part of the issues in the divorce under Idaho Rule of Family Law Procedure 807. If that is the case, Donna argues the magistrate court should re-value the MVH units because five years have passed since their initial valuation, and the units have likely increased in value. We disagree with Donna's arguments. Even though Stan "accepted" certain benefits of his property awards, he did not trigger the *Bechtel* rule.

7

Starting with the marital home, this property award is not disputed in Stan's appeal. The acceptance of one part of a judgment does not prevent an appeal from a separate, disconnected part of the judgment. *Burnham*, 104 Idaho at 553, 661 P.2d at 338. Here, Stan was awarded the marital home. Stan did not appeal this portion of his property award. Donna did not cross-appeal any portion of the magistrate court's order. On intermediate appeal, the district court remanded the valuation of the MVH Class A units and the equalization payment. Thus, even on remand, Stan's award of the marital home is disconnected from the valuation and equalization payment. As such, Stan's improvements to the marital home did not trigger the *Bechtel* rule to prevent his appeal.

Next, Donna asserts that Stan trigged the acceptance of benefits doctrine by accepting $133,139 in MVH distributions. It is not disputed that Stan accepted these benefits, or that he appealed the MVH Class A units' valuation. However, the *Bechtel* rule does not apply unless a party accepts benefits *and* risks a reduced award on appeal. Stan does not risk a reduced award of MVH units through his appeal. For starters, restrictions on MVH ownership prohibited Donna from being awarded MVH units on remand. The MVH units must be owned by a physician with patient privileges at MVH. Thus, the only way Stan's award of MVH units would be reduced on appeal is if the magistrate court imposed a mechanism for Donna to receive distributions individually, such as a constructive trust, or if Stan was ordered to sell a portion of the units to pay Donna. The magistrate court rejected Donna's suggestion to impose a constructive trust, and Donna did not cross-appeal Stan's award of MVH units.

Even if the magistrate court reduced the value of the MVH units as Stan advocates should be done, it would not reduce Stan's initial 40% community property division. Thus, Stan's appeal does not risk a reduced property award.

Similarly, Stan did not trigger the *Bechtel* rule when he used MVH distributions to pay taxes or when SOE transferred MVH distributions to SOM. Again, the *Bechtel* rule applies when a party risks a reduced award on appeal. Because Stan does not risk a reduced property award in his appeal, the *Bechtel* rule does not preclude his appeal.

Donna argues that the magistrate court could order a new trial to revalue and redistribute the entire community property estate pursuant to I.R.F.L.P. 807(D), which would leave open the possibility that Stan receives a reduced community property award from the initial distribution. This argument fails. Rule 807(D) does allow a magistrate court to order a new trial on its own initiative. The magistrate court must do so no later than fourteen days after entry of the magistrate

8

court's judgment. That window of opportunity has long since passed in this case. Accordingly, the district court did not err in denying Donna's motion to dismiss the appeal.

**B. The district court erred in reversing the magistrate court's valuation of the MVH Class A units.**

The district court reversed the magistrate court's valuation of the parties' MVH units. Donna argues that the magistrate court's valuation was based on substantial and competent evidence and that the district court failed to adhere to its proper appellate role by substituting its own judgment on the valuation for that of the magistrate court. We agree and reverse the district court's decision.

In divorce proceedings, valuation of community property is within the discretion of the trial court and will not be disturbed on appeal if it is supported by substantial and competent evidence. *Stewart v. Stewart*, 143 Idaho 673, 677, 152 P.3d 544, 548 (2007) (citing *Chandler v. Chandler*, 136 Idaho 246, 249, 32 P.3d 140, 143 (2001)). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 17, 278 P.3d 415, 419 (2012) (quoting *Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003)). Substantial evidence does not mean uncontradicted evidence. *Id.* "The trial court, not this Court on appeal, resolves the conflicting evidence and determines the weight, credibility[,] and inferences to be drawn from the evidence." *Chandler*, 136 Idaho at 249, 32 P.3d at 143 (internal quotation marks omitted).

At trial, Pinkerton was the only expert who testified on the valuation of the MVH units. Pinkerton's testimony outlined the various valuation approaches he used in formulating his opinion. Pinkerton testified that in 2014, Symbion purchased Class A units from a physician ownership group for $9,191 per unit. Taking the $9,191 Symbion sale price, Pinkerton applied a 10% discount to account for lack of control, factored in the restrictions on the MVH units' marketability, and reached a value of $8,272 per unit.

Pinkerton's testimony also described the difference between the Symbion sale price ($9,191) and his eventual valuation ($8,272). Pinkerton testified that those two values were derived using the exact same method. Pinkerton further testified that he ultimately chose the $8,272 valuation because he thought it was "a conservative number." Pinkerton testified:

> Well, I went with [$8,272], which is the [Symbion] transaction adjusted for control – for lack of control, *only because I think it's a conservative number*. It's not my job to puff. I don't want to have a value that is too high. When I look at the income

approach, there's some – there's some numbers there that, you know, I think there's some real value in parts, but there's a little bit more in terms of assumptions there. So I tried to go with something that felt more concrete, and what I believe is more concrete. And I think [$8,272] is a realistic number, and that's why I chose it.

(Emphasis added).

The magistrate court considered Pinkerton's opinion and determined that the Symbion sale price was the most reasonable of the five values presented. In adopting the Symbion sale price, the magistrate court reasoned:

> The [court] must still then determine the value of the MVH Class A [units]. Donna's own expert and her counsel posit a number of ways in which the [units] can be valued. Each method appears to be sound. However, Pinkerton concludes that the Fair Market Value for the MVH Class A [units] is [$8,272] per unit. The most reasonable valuations, in the [court's] opinion, are Pinkerton's conclusion of a Fair Market Value of [$8,272] per unit and the recent sale price of [$9,191] per unit. The actual sale price has two advantages. The first and foremost is that it is an actual transaction that the [court] can reply upon. Secondly, it falls squarely in the mid-range of Pinkerton's indications of value using different valuation methods. If you include Evan's formula value, it still leaves the [$9,191] per unit price in the mid-range of the six different pre-tax values the [court] was asked to consider. The [court] hereby adopts the value of [$9,191] per unit for the MVH Class A units.

(Internal record citations omitted).

The district court provided multiple reasons for why the magistrate court erred in accepting Pinkerton's valuation, none of which are supported by the record or the law.

First, the district court concluded that the magistrate court erred in using the Symbion sale price because it was offered only to explain how Pinkerton arrived at the fair market value of the MVH Class A units, and that a "single sale . . . by definition is not substantial evidence." However, the Symbion sale price was *not* offered just to show how Pinkerton arrived at his eventual valuation. Rather, it was included with five separate valuations, each supported by a particular valuation method. Further, although the district court held that a single sale "by definition" is not substantial evidence and suggests that more than one piece of evidence is required, there is no such requirement. Substantial and competent evidence is "relevant evidence that a reasonable mind might accept to support a conclusion." *Hurtado*, 153 Idaho at 17, 278 P.3d at 419. In some circumstances, substantial evidence may, in fact, consist of a single piece of evidence.

Second, the district court concluded that the Symbion sale price reflected an "additional value added on the shares for the purchase of a majority share in [MVH], which undoubtedly adds value to the [units]." The district court further concluded that "Pinkerton's uncontested testimony"

10

supported that the Symbion price was inflated because Symbion paid for majority control in MVH. Contrary to the district court's conclusion, Pinkerton did not apply a discount to the Symbion sale price to correct any premium paid for "majority control" in MVH. Rather, Pinkerton applied a 10% discount for lack of control regarding the units' *restrictions on marketability—i.e.*, physician only ownership. In fact, Pinkerton's testimony refutes the district court's conclusion that the Symbion sale was for a majority share in MVH. On cross-examination, Pinkerton's testimony was attacked multiple times on this very point. Pinkerton denied that Symbion paid for a controlling or majority interest in MVH. Pinkerton testified that Symbion "purchased minority interests, which they assembled into control. They purchased minority interests from various physician shareholders [including Stan], and to put it all together, they have [sic] control. But they didn't pay for control." Thus, the district court faulted the magistrate court for failing to consider Pinkerton's "majority control" discount, when Pinkerton applied no such discount.

Third, the district court concluded that, because Pinkerton's testimony was uncontradicted, and the magistrate court did not make any specific finding challenging the $8,272 value, the magistrate court erred by not adopting it. The fact that Pinkerton's conclusion was uncontradicted is not determinative in considering whether the magistrate court supported its ultimate valuation with substantial and competent evidence. Valuation of the community property is within the discretion of the trial court and will not be disturbed if it is supported by substantial and competent evidence. *Stewart*, 143 Idaho at 677, 152 P.3d at 548. Here, the magistrate court adopted the Symbion price over Pinkerton's conclusion, and supported its decision with substantial and competent evidence. Accordingly, the district court erred in reversing the magistrate court's valuation.

**C. The district court erred in concluding that the magistrate court failed to consider Stan's tax consequences.**

Donna contends that the district court erred in holding that the magistrate court failed to make specific findings of fact regarding the future tax consequences Stan will incur to make the equalization payment. Specifically, Donna argues that the district court again substituted its own judgment for that of the magistrate court. We agree.

The district court erred in concluding that the magistrate court failed to make specific findings regarding Stan's hypothetical future tax consequences. Contrary to the district court's conclusion, nothing in this Court's jurisprudence required the magistrate court to consider the

11

hypothetical future tax consequences of selling MVH units in its valuation. Existing case law has only required trial courts to consider actual tax consequences in valuations where the trial court orders the sale of a community property asset. In *Carr v. Carr*, the Court of Appeals held that where a community property asset sale is *ordered* by the court, the trial court "should" consider the tax consequences of the sale in its valuation. 108 Idaho 684, 690, 701 P.2d 304, 310 (Ct. App. 1985). However, *Carr* does not address whether a trial court must consider the tax consequences of a hypothetical future asset sale.

The district court, citing *Vierstra v. Vierstra*, 153 Idaho 873, 292 P.3d 264 (2012), held that tax consequences are to be considered in a valuation where the property asset was more likely than not going to be sold. The district court's holding both misconstrued this Court's holding in *Vierstra*, and applied a valuation rule that does not exist in Idaho.

In *Vierstra*, the divorcing parties' largest community property asset was a dairy farm. 153 Idaho at 874, 292 P.3d at 265. The magistrate court did not know whether either party would be able to "buy-out" the other party's interest in the dairy farm. *Id.* As such, the magistrate court gave the wife the first option to buy the dairy farm. *Id.* If she could not finance the dairy farm, then her husband would have the option to buy. *Id.* Whoever purchased the farm was required to pay the dairy farm's taxes and make an equalization payment to the party who did not purchase the dairy farm. *Id.* If neither party could purchase the dairy farm, it would be sold. *Id.* The magistrate court calculated that whoever purchased the farm would face approximately $1,006,000 in tax liability. *Id.* at 875, 292 P.3d at 266. The magistrate court issued an order stating that if the party who purchased the farm did not pay taxes on the farm, or if the tax liability was lower than $1,006,000, the non-purchasing party could petition the court to adjust the judgment and seek an equalization payment. *Id.* After the wife unsuccessfully attempted to finance the dairy farm, the husband successfully exercised his purchase option. *Id.* The wife later petitioned the court for an equalization payment, presenting evidence that the farm's tax liability was $85,036, which was $920,964 less than determined by the magistrate court. *Id.* The magistrate court denied the wife's motion to adjust, and on intermediate appeal the district court held that the magistrate court erred in creating a procedure for post-judgment modification of the property division. *Id.* at 880, 292 P.3d at 271. Thus, the issue this Court decided was whether the magistrate court had jurisdiction to consider the wife's motion to adjust the property division to account for the reduced tax burden. *Id.*

The district court's reliance on *Vierstra* is misplaced. The district court asserted *Vierstra* for the proposition that tax consequences are considered where the property was more likely than not going to be sold, but *Vierstra* contains no such holding. *Vierstra* analyzed whether the magistrate court erred in creating a post-judgment procedure and whether the magistrate court had jurisdiction to hear the wife's petition. *Id.* at 880, 292 P.3d at 271. *Vierstra* did not analyze the magistrate court's valuation.

While this Court has never considered whether a trial court must take into account the tax consequences of a hypothetical, future liquidation in valuing a community property asset, persuasive authority from other jurisdictions provides that post-sale liquidation value is disfavored over the present fair market value of an asset. *Sommers v. Sommers*, 660 N.W.2d 586, 590 (N.D. 2003). *See also In re Wolters*, 123 A.3d 1008, 1015 (N.H. 2015); *Orgler v. Orgler*, 568 A.2d 67, 71–77 (N.J. Sup. Ct. App. Div. 1989). In *Sommers*, the trial court rejected the wife's fair market value of her husband's orthodontic practice in favor of the husband's future liquidation value, which considered the future tax consequences of a sale. *Id.* at 589. The North Dakota Supreme Court reversed the valuation, holding that the trial court erred in choosing a liquidation value when no evidence suggested that sale of the practice was required "anytime soon." *Id.* at 590. The *Sommers* court explained its position on liquidation value by observing:

> While liquidation value, rather than fair market value, may be appropriate under certain circumstances involving distressed conditions, liquidation value is the least favored method of valuing any type of marital property in a divorce. Ordinarily, fair market value, not liquidation value, is the proper method of valuing property in a divorce.

*Id.* (internal citations and quotation marks omitted). The court further held that, where an asset is not going to be liquidated, expenses that would only be incurred in liquidation should not be deducted. *Id.* (citing *Heggen v. Heggen*, 452 N.W.2d 96, 99 (N.D. 1990)). Thus, persuasive authority suggests that liquidation value, or future sale value, need not be considered unless there is evidence that the sale is imminent or required.

Additionally, decisions from New Jersey and New Hampshire provide further support for the magistrate court's decision. A New Jersey appellate court held that the "hypothetical tax consequences upon the future sale or transfer of marital assets should not be deducted from present value for equitable distribution purposes. The hypothetical tax is simply too speculative to permit a reduction in value." *Orgler*, 568 A.2d at 73. Further, the New Hampshire Supreme Court reversed

13

a trial court's valuation that accounted for *estimated* tax consequences. *In re Wolters*, 123 A.3d at 1015. The *Wolters* court held:

> We conclude, therefore, that, because sale or transfer of the properties at issue was neither *required* by the trial court's order, nor *certain to occur within a short time after the divorce decree*, the trial court erred to the extent that, when valuing the properties for distribution, it reduced the value of those properties to account for *estimated taxes* that would be due by the parties in the event of a sale or transfer of the properties. Accordingly, we vacate the trial court's distribution order and remand for distribution of assets consistent with this opinion.

*Id.* (emphasis added).

The reasoning of these other jurisdictions is persuasive. Here, there was no evidence presented that the sale of MVH units was certain to occur within a short time after the divorce became final or would be required by the magistrate court's division of community property. Although Stan testified that he would need to sell his MVH units when he retires, Stan did not testify to a specific anticipated retirement date at trial, nor did he testify that his retirement was imminent. Stan testified that he did not know how long he was going to continue working, that there was nothing "definite" about how long he would continue to work, and that his neck injury made him "worried." While Stan further testified that his neck injury gave him "doubts" about continuing to perform surgery in the future, such testimony did not contradict the magistrate court's finding that neither party intended to immediately liquidate, sell, or otherwise dispose of their assets. Contrary to the district court's conclusion, Stan did not testify that his retirement was "impending" or that he "need[ed] to retire soon." Stan's uncertainty about his future employment did not mean that his retirement was "impending." Further, the fact that Stan was "worried" about his neck injury did not suggest that his retirement was imminent.

The district court further concluded—and Stan argues on appeal—that the magistrate court's equalization payment created an immediate need for Stan to sell his MVH units. However, the magistrate court did not order or require Stan to sell his assets. *See In re Wolters*, 123 A.3d at 1015. Although Stan argues that the magistrate court's division effectively *did* order him to sell MVH units, this argument *assumes* that selling Stan's MVH units was the *only* possible avenue to fund the equalization payment. Selling MVH units may certainly be an option, but the record does not suggest that was Stan's *only* option. For instance, Stan could get a loan or mortgage one of his homes. Further, the district court failed to consider the fact that Stan's distributions from the MVH units could pay a substantial part of the equalization payment. The MVH units produced $528,266

14

in distributions alone in 2014. Thus, liquidating MVH units was not Stan's only option to make the equalization payment.

Additionally, persuasive authority suggests that hypothetical tax consequences on the future sale or transfer of marital assets should not be deducted from present value for *equitable distribution purposes*. *See Orgler*, 568 A.2d at 73. Here, the entire purpose of the equalization payment was to serve as an equitable distribution for the parties. The equalization payment was ordered because Stan received the most valuable income-producing assets in the property division; his occupation and these assets afford him substantial on-going income.

Rather than reviewing the magistrate court's valuation for substantial and competent evidence, the district court made no mention of substantial and competent evidence in its tax consequences analysis. Instead, the district court substituted its own inference on Stan's tax liability over the magistrate court's regarding the equalization payment. The district court appears to have based this inference on Stan's argument on intermediate appeal that he did not have enough liquid assets to cover the equalization payment. Essentially, the district court found the equalization payment to be an imminent taxable event that needed to be considered by the magistrate court in its valuation. However, as discussed above, hypothetical future tax consequences are not required to be considered in a trial court's valuation. Thus, the district court improperly drew its own inferences regarding the evidence of Stan's tax liability over that of the magistrate court.

Finally, the district court erred in concluding that the magistrate court failed to give Stan's testimony regarding his neck injury consideration in its findings. The magistrate court made multiple findings of fact regarding Stan's neck surgery and its impact on his job. For example, the magistrate court found that Stan "had neck surgery during the pendency of the divorce" and that he "continued his employment after the neck surgery." In its memorandum decision, the magistrate court noted that "Stan recently had neck surgery but has continued to practice in his field." Thus, the magistrate court did not ignore Stan's testimony about his neck injury. Accordingly, the district court erred in reversing the magistrate court's valuation for failing to consider Stan's future tax consequences.

**D. The district court erred in reversing Donna's equalization payment award.**

The district court held that the magistrate court erred in awarding Donna a $2,107,400 equalization payment. The district court concluded that because the equalization payment was

15

based "almost entirely upon the valuation of the [MVH] Class A [units]," its prior determination that the magistrate court erred in its valuation of the MVH Class A units justified a remand to adjust the equalization payment. Additionally, the district court mirrored two conclusions from its tax consequences analysis: (1) the magistrate court failed to consider Stan's "hardship" in making the equalization payment without having to sell his MVH units; and (2) the magistrate court did not take into account Stan's neck injury and its effect on his future earning capacity. Thus, the district court remanded the equalization payment to determine an amount reflective of Stan's future earning capacity and the value of Stan's MVH Class A units.

Because the district court erred in reversing the magistrate court's decisions on valuation and tax consequences, the district court further erred in reversing the equalization payment on those same erroneous grounds.

E. **The district court erred in remanding Donna's spousal maintenance award.**

The district court reversed the magistrate court's award of spousal maintenance, holding that the magistrate court failed to address the first step in determining whether spousal maintenance is warranted pursuant to Idaho Code section 32-705(1). Specifically, the district court held that the magistrate court failed to make findings of fact regarding whether Donna had sufficient property to provide for her reasonable needs and whether she was unable to support herself through employment. Additionally, the district court held that the magistrate court erred in two other aspects of its spousal maintenance decision: (1) by concluding that Donna only had her assets to live off of and would exhaust them without income; and (2) by failing to factor into Stan's earning capacity his unrebutted testimony that he faced early retirement.

Spousal maintenance awards are governed by Idaho Code section 32-705, which provides:

1. Where a divorce is decreed, the court may grant a maintenance order if it finds that the spouse seeking maintenance:

   (a) Lacks sufficient property to provide for his or her reasonable needs; and

   (b) Is unable to support himself or herself through employment.

2. The maintenance order shall be in such amounts and for such periods of time that the court deems just, after considering all relevant factors which may include:

   (a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;

   (b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;

16

(c) The duration of the marriage;

(d) The age and the physical and emotional condition of the spouse seeking maintenance;

(e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;

(f) The tax consequences to each spouse;

(g) The fault of either party.

Awarding spousal maintenance under Idaho Code section 32-705 is within the discretion of the trial court and requires the trial court to give due consideration to each party's financial needs and abilities. *Papin v. Papin*, 166 Idaho 9, 37, 454 P.3d 1092, 1120 (2019). To determine if a trial court abused its discretion, this Court considers whether the trial court (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of that discretion, (3) acted consistently with the legal standards applicable to the specific choices available to it, and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 195 (2018). "This Court does not expect mathematical precision in calculating to the dollar how much maintenance is required, nor must the record support a specific amount." *Stewart*, 143 Idaho at 680, 152 P.3d at 551 (internal brackets and quotation marks omitted). "The award, however, must be supported by substantial and competent evidence." *Id.*

Donna argues that the district court again substituted its own judgment for that of the magistrate court. Further, Donna argues that the district court failed to identify an abuse of discretion in the magistrate court, and that the magistrate court supported its award of spousal maintenance with substantial and competent evidence. We agree.

Section 32-705(1) provides that spousal maintenance may be awarded if the spouse seeking maintenance: "(a) [l]acks sufficient property to provide for his or her reasonable needs; and (b) [i]s unable to support himself or herself through employment." Under Idaho law, "reasonable needs" accounts for the standard of living established during the marriage. *Stewart*, 143 Idaho at 680, 152 P.3d at 551. There is no requirement under Idaho law that a spouse must exhaust all of her assets before an award of spousal maintenance is appropriate. *Id.*

In its memorandum decision and conclusions of law, the magistrate court considered both of these factors. Starting with the "reasonable needs" factor, the magistrate court determined that Donna's only income would be from the interest accrued from her property award. As a result, the magistrate court concluded that Donna would have to live off her assets to support her reasonable

17

needs. Further, the magistrate court noted that during the last few years of Donna's marriage, she received an allowance of $4,500 per month from Stan for daily expenses and household bills. Turning to Donna's ability to support herself through employment, the magistrate court found that Donna has not held a job in over thirty-five years. During the marriage, neither she nor Stan considered her going back to work as an option. While Donna testified that she could likely get a job "if she needed to," she would only be eligible for a minimum-wage position. Further, the magistrate court found that Donna is at an age where any continued education to earn above minimum-wage would take longer than her working years are likely to last. Thus, the magistrate court sufficiently articulated an appropriate rationale for Donna's spousal maintenance award.

Although the district court did not specifically articulate this point, it appeared to take issue with the magistrate court's failure to make specific findings regarding section 32-705(1)(b) in the section of its memorandum decision discussing spousal maintenance. However, the magistrate court discussed Donna's employment prospects at length earlier in its memorandum decision analyzing the property division under Idaho Code section 32-712. Additionally, the magistrate court's findings of fact regarding Donna's employment prospects are supported by substantial and competent evidence in the record. Thus, the magistrate court did not fail to consider Donna's employment prospects in its findings of fact and conclusions of law.

The district court noted three additional errors in the magistrate court's findings of fact and conclusions outside of section 32-705(1), none of which are supported by the record or the law. First, the district court held that the magistrate court erred in its factual findings and conclusions by stating that Donna only had her assets to live off and that she would exhaust them in the process. The district court held that Donna contradicted this finding when she testified that she would be willing to find a minimum-wage job if needed. The district court did not cite any authority for this position, but rather stated that there is "no case law that this [court] can find that states a minimum-wage job is not sufficient enough to be considered when evaluating the financial needs of a spouse seeking maintenance." The district court suggested that it was inappropriate for the magistrate court to conclude that Donna's only income would be her assets as long as she was capable of working a minimum-wage job. Contrary to the district court's reasoning, the magistrate court *did* consider the fact that Donna was capable of minimum-wage employment in its memorandum decision. Further, this Court has never required the trial court to consider whether a spouse is capable of working a minimum-wage job before awarding spousal maintenance. This Court

18

recently analyzed a similar situation in *Papin v. Papin*, 166 Idaho 9, 454 P.3d 1092 (2019), which affirmed a spousal maintenance award. *Id.* at 37–38, 454 P.3d at 1120–21. This Court affirmed the magistrate court's conclusion that the spouse would be unable to support herself, even though she had a history of minimum-wage employment. *Id.* at 38, 454 P.3d at 1121. Thus, the district court's reliance on Donna's ability to get a minimum-wage job is misplaced.

Second, the district court repeated the same assertion from above regarding Stan's earning capacity and his unrebutted testimony regarding his neck injury and "early retirement." Again, nothing in the record supports the district court's conclusion that Stan is facing early retirement, or that his earning capacity will be affected by his neck injury. Stan testified that he did not know when he is going to retire, which does not suggest that his retirement is impending, imminent, or earlier than anticipated.

Third, the district court held that the magistrate court erred in finding that Donna would exhaust her assets without a spousal maintenance award because nothing in the record suggested that she would exhaust her sizable property award without maintenance. It is not clear that the magistrate court concluded that Donna would, in fact, exhaust *all* of her assets without spousal maintenance. The magistrate court concluded that Donna's income would be the interest from property award assets. The magistrate continued, stating that "[t]his would mean that Donna would have to *live off her assets* and *exhaust them in the process* while Stan went forward earning upwards of $500,000 a year by conservative estimates." (Emphasis added). In any event, even if the magistrate court did conclude that Donna would exhaust all of her assets, a party is not required to exhaust her assets to be eligible for spousal maintenance. *Stewart*, 143 Idaho at 680, 152 P.3d at 551. Thus, whether the magistrate court supported this statement with a specific factual finding does not serve as an independent basis of error. Accordingly, the district court erred in reversing the magistrate court's spousal maintenance award.

## F. The district court did not err in affirming the magistrate court's admission of Diane Barker's expert testimony.

At trial, Donna called Barker as an expert witness in divorce financial planning. Stan objected to her testimony, arguing that Barker did not qualify as an expert under Idaho Rule of Evidence 702 and that her conclusions invaded the province of the trial court in dividing the parties' community property. The magistrate court overruled Stan's objection and allowed

Barker's testimony. The district court affirmed the magistrate court's decision to admit Barker's expert testimony.

The trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Thurston Enters., Inc. v. Safeguard Bus. Sys. Inc.*, 164 Idaho 709, 716, 435 P.3d 489, 496 (2019). Error is "disregarded unless the ruling is a manifest abuse of the trial court's discretion and affects a substantial right of the party." *Id.* (quoting *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50–51, 995 P.2d 816, 820–21 (2000)). When reviewing for abuse of discretion, this Court considers whether the trial court (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of that discretion, (3) acted consistently with the legal standards applicable to the specific choices available to it, and (4) reached its decision by an exercise of reason. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 195.

The admissibility of expert testimony is governed by I.R.E. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

I.R.E. 702.

On cross-appeal, Stan argues that the magistrate court erred in admitting Barker's testimony because Barker does not qualify as an expert pursuant to I.R.E. 702, Barker's testimony was unreliable, and Barker's testimony was speculative and unsubstantiated. We decline to consider these arguments because Stan has failed to demonstrate that a substantial right has been affected. Under the Idaho Rules of Evidence, a party "may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party." I.R.E. 103(a). Similarly, under the Idaho Rules of Civil Procedure, "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. Further, a party appealing an evidentiary ruling for abuse of discretion "must demonstrate both the trial court's abuse of discretion and that the error affected a substantial right." *Hurtado*, 153 Idaho at 18, 278 P.3d at 420.

We decline to consider issues on appeal unless they are supported by argument and authority. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). "Consequently, because an appellant can only prevail if the claimed error affected a substantial right, the appellant must present some argument that a substantial right was implicated." *Hurtado*, 153 Idaho at 18,

20

278 P.3d at 420. Here, although Stan argues, in passing, that the magistrate court abused its discretion in admitting Barker's expert testimony, he presents no argument that the alleged error affected a substantial right. Accordingly, Stan has waived this issue.

## G. The district court did not err in affirming the magistrate court's unequal community property division.

The magistrate court made an unequal award of the parties' community property. The magistrate court awarded Donna 60% of the community property, leaving Stan with the remaining 40%. The district court affirmed this distribution.

The trial court's disposition of community property is reviewed for abuse of discretion. *Stewart*, 143 Idaho at 677, 152 P.3d at 548. There must be a "compelling reason" for an unequal division of community property. I.C. § 32-712(1)(a); *Moffet v. Moffet*, 151 Idaho 90, 97, 253 P.3d 764, 771 (Ct. App. 2011). To determine if a trial court abused its discretion, this Court considers whether the trial court (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of that discretion, (3) acted consistently with the legal standards applicable to the specific choices available to it, and (4) reached its decision by an exercise of reason. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 195.

On cross-appeal, Stan contends that the magistrate court erred in making an unequal property division because Donna, in her testimony, did not ask for an unequal community property division. Stan further argues that the magistrate court erred in engaging in a cursory review of the factors in Idaho Code section 32-712 and ignored several aspects of Donna's ability to work that cut against an unequal property division. Stan argues that the magistrate court abused its discretion because it failed to act within the textual boundaries of Idaho Code section 32-712 and failed to base its findings on an exercise of reason.

The district court did not err in affirming the magistrate court's unequal community property division. In settling on an unequal property division, the magistrate court concluded:

> Considering all the factors in Idaho Code [s]ection 32-712, but especially the duration of the marriage; the age, health, occupation, amount and source of income, vocational skills, employability, and liabilities of each spouse; and the present and potential earning capacity of each party[,] the [court] concludes that an unequal division of property is necessary to make an equitable division of the community property.

The magistrate court supported this conclusion with factual findings based on the record. The magistrate court found that the parties' sources of income were Stan's medical practice, business

21

entities, and the MVH units. Ownership of MVH units is restricted to physicians. Thus, Donna did not control or directly contribute to any of the parties' income. Stan is a practicing orthopedic surgeon, earning approximately $189,240 in annual salary. Stan's salary of course does not reflect the substantial income he receives (which substantially exceeds his annual salary) as an owner of MVH units. Donna has not held a job since 1979. While Donna testified that she could get a job if she needed to, she did not believe she would be eligible for anything over minimum-wage. Further, both parties were 57 years old at the time of their divorce. The magistrate court concluded that at Donna's age, the possibility of continued education leading to a high paying job was unlikely. Based on the foregoing, the magistrate court sufficiently supported its decision to award an unequal community property distribution in Donna's favor. As such, the district court did not err in affirming this decision.

Stan's arguments challenging the magistrate court's decision lack merit. First, Stan argues that a portion of Donna's testimony binds her to an equal, or 50/50, community property division. At trial, Donna's attorney asked her if she was requesting to receive anything more than an exact equal division of property, to which she responded, "No." Donna's attorney clarified this statement, asking Donna if she wanted to receive exactly what was listed on her proposed property division, to which Donna responded, "Yes." Donna's proposed property division awarded herself 85% of the MVH Class A units. Donna may have been confused on the witness stand, but an award of 85% of the MVH Class A units would most likely result in an unequal property award in her favor. Even if Donna clearly asked for an equal division of community property on the stand, Stan failed to cite any authority suggesting that Donna's words in response to a legal—not factual—question during an examination bound the magistrate court to an equal property division. Notwithstanding Donna's testimony, Donna's Verified Complaint for Divorce asked for an unequal award of community property in her favor. Further, the division of community property is within the discretion of the magistrate court, not the parties'.

Second, Stan argues that the magistrate court engaged in only a cursory review of the factors listed under Idaho Code section 32-712. This argument is not supported by the magistrate court's memorandum decision. The magistrate court quotes the entirety of Idaho Code section 32-712, and engages in a thorough discussion of the factors that bear on this case before reaching its conclusion.

Third, Stan argues that the magistrate court "ignored any evidence which mitigated [sic] against an unequal property division." Stan argues that the magistrate court ignored the fact that Donna was capable of obtaining a minimum-wage job, that Donna's living expenses were only $4,000 a month, and that Donna was capable of earning more than 30% of her monthly living expenses through minimum-wage employment. Stan further asserts that the magistrate court ignored the fact that Donna was scheduled to receive over $2 million in cash assets. Stan's arguments lack support in the record and the law. Contrary to Stan's assertion, the magistrate court *did* consider that Donna was capable of minimum-wage employment. Further, nothing in Idaho Code section 32-712 requires the magistrate court to consider a party's monthly expenses and weigh them against their potential earning capacity. Finally, the magistrate court *did* recognize that it was awarding Donna over $2 million in cash assets. Thus, Stan's argument that the magistrate court exceeded the outer boundaries of its discretion under Idaho Code section 32-712 fails. In addition, Stan failed to demonstrate how the magistrate court failed to reach its conclusion based on an exercise of reason, or provide any authority to support that assertion. We decline to consider arguments that are not supported by argument and authority. *See Bach*, 148 Idaho at 790, 229 P.3d at 1152. The magistrate court did not abuse its discretion in awarding an unequal community property division. Accordingly, the district court did not err in affirming the magistrate court.

**H. Stan's award of costs on intermediate appeal is vacated.**

Donna appeals the district court's award of costs to Stan as the prevailing party on intermediate appeal pursuant to Idaho Appellate Rule 40. Because we reverse the district court's decision on intermediate appeal, Stan is no longer the prevailing party on intermediate appeal. Thus, we vacate the district court's award of costs to Stan.

**I. Attorney fees and costs for this appeal.**

Both parties request attorney fees on appeal to this Court pursuant to Idaho Code section 12-121. Attorney fees under this statute may be awarded to the prevailing party when an appeal is brought frivolously, unreasonably, or without foundation. I.C. § 12-121.

Section 12-121 fees are only available to a prevailing party. *Inv'r Recovery Fund, LLC, v. Hopkins*, Dkt. Nos. 46247, 2020 WL 3583817, at *11 (Idaho July 2, 2020). The prevailing party question examines the overall view of the action rather than a claim-by-claim analysis. *Idaho Military Historical Soc'y, Inc., v. Maslen,* 156 Idaho 624, 630, 329 P.3d 1072, 1078 (2014). Here,

although Stan technically prevailed on Donna's motion to dismiss the appeal, Donna prevailed on every other issue. Thus, Donna is the overall prevailing party on appeal. Notwithstanding, we decline to award Donna attorney fees. This appeal raised complex appellate and family law issues that were supported with argument and authority. Accordingly, neither party is entitled to attorney fees on appeal.

Additionally, Stan seeks an award of costs on appeal if he is the prevailing party pursuant to I.A.R. 40. This rule provides that "costs shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 40(a). We hold that Stan is not entitled to costs on appeal because he is not the prevailing party.

## IV.    CONCLUSION

The decision of the district court is affirmed in part and reversed in part. We affirm the following decisions of the district court: (1) the decision denying Donna's motion to dismiss the appeal; (2) the decision affirming the magistrate court's admission of Diane Barker's testimony; and (3) the decision affirming the magistrate court's unequal community property division. However, we reverse the following decisions of the district court and remand the case back to the district court with instructions to affirm the magistrate court on the following issues: (1) the valuation of the MVH Class A units; (2) the consideration of tax consequences; (3) the equalization payment; (4) spousal maintenance; (5) and Stan's costs on intermediate appeal. Costs are awarded to Donna.


Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.