**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49352**

| | |
|---|---|
| RICKY ASHTON CAIN, | ) |
| | ) **Filed: November 17, 2022** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| VICTORIA ANNE CAIN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge; Hon. Andrew R. Woolf, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming in part and reversing in part the judgment, <u>affirmed</u>.

David A. Johnson and Beard St. Clair Gaffney PA; Kristopher D. Meek, Idaho Falls, for appellant.

Parsons Behle & Latimer; Challis A. McNally, Idaho Falls, for respondent.

BRAILSFORD, Judge

Ricky Ashton Cain (Rick) appeals the district court's decision, on intermediate appeal, affirming in part and reversing in part the magistrate court's judgment and decree of divorce. Specifically, Rick asserts the magistrate court erred in concluding that a franchised business, The Little Gym, was acquired with community property funds and that The Little Gym's value was $100,000. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Rick and Victoria Cain (Tori) were married in 2011, and Rick filed for divorce in June 2018. The case proceeded to trial in May 2019. At trial, Tori testified that she acquired a franchise right to operate The Little Gym in May 2017; she obtained the financing for the business from her

1

father, John Zumberge; and the business had a value of $100,000 at the time of trial. The magistrate court admitted into evidence several documents related to the funding of The Little Gym. These documents included: (1) a promissory note signed by Tori and payable to Zumberge in the amount of $350,000; (2) a "loan request letter" from Tori to Zumberge dated May 2017, requesting "a small business loan of $350,000" to fund The Little Gym, which letter Zumberge countersigned noting "approved"; and (3) a "business plan" for The Little Gym dated August 2017. Additionally, Zumberge testified about providing the financing for The Little Gym.

Following the trial, the magistrate court entered written findings of fact and conclusions of law. The court found that "the parties agreed they would open The Little Gym and would borrow money from Tori's father to do so"; "Tori's father agreed to loan the parties $350,000 in order to open The Little Gym"; and "Tori and Rick started The Little Gym in May 2017." Based on these findings, the court concluded:

> The Little Gym was started during the marriage and is community property. The value of The Little Gym is $100,000.00. The debt owed on The Little Gym is $350,000. The debt is community debt. The Little Gym is awarded to Tori, along with the debt at a community value of [a negative] $250,000.

On intermediate appeal, Rick challenged the magistrate court's conclusions that The Little Gym's value was $100,000; The Little Gym was community property; and the related community debt was $350,000. In addressing these challenges, the district court ruled that the magistrate court did not err in concluding that The Little Gym was community property acquired with community debt or that The Little Gym's value was $100,000. The district court, however, ruled "the undisputed evidence demonstrated that the parties only incurred $325,000 in debt on The Little Gym." Accordingly, the district court ordered the magistrate court on remand to correct the debt calculation and to adjust the equal division of community property and debt between the parties.

Rick timely appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our

2

disposition of the appeal will affirm or reverse the decision of the district court. *Id.* Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

The manner and method of the acquisition of community and separate property are questions of fact for the trial court. *Papin v. Papin*, 166 Idaho 9, 24, 454 P.3d 1092, 1107 (2019). The characterization of property as either community or separate property is a mixed question of law and fact. *Id.* Determining the value of the community property is within the trial court's discretion and will not be disturbed on appeal if substantial and competent evidence supports the valuation. *Id.* at 29, 454 P.3d at 1112. Substantial and competent evidence does not mean uncontradicted evidence but rather is relevant evidence that a reasonable mind might accept to support a conclusion. *Griffiths v. Griffiths*, 167 Idaho 287, 296, 469 P.3d 615, 624 (2020). The trial court resolves conflicting evidence and determines the weight, credibility, and inferences to be drawn from the evidence. *Id.*

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

### A.      Characterization of The Little Gym

Rick challenges the characterization of The Little Gym as community property acquired with community debt. Whether a specific piece of property is characterized as community or separate property depends on when it was acquired and the source of the funds used to purchase it. *Papin*, 166 Idaho at 24, 454 P.3d at 1107. The property's characterization as either community or separate vests at the time the property is acquired. *Id.* "All property of either the husband or the wife owned before marriage" or thereafter acquired "by gift, bequest, devise or descent" or with proceeds of separate property is separate property. Idaho Code § 32-903. Under Idaho law, a gift is defined as a voluntary transfer of property by one to another without consideration or compensation therefore. *Stanger v. Stanger*, 98 Idaho 725, 728, 571 P.2d 1126, 1129 (1977); *see*

*also Smith v. Smith*, 164 Idaho 457, 472, 432 P.3d 6, 21 (2018). "All other property acquired after marriage by either husband or wife is community property." I.C. § 32-906. A rebuttable presumption exists that all property acquired during marriage is community property. *Reed v. Reed*, 137 Idaho 53, 58, 44 P.3d 1108, 1113 (2002). A party seeking to show an asset acquired during marriage is separate property bears "the burden of proving with reasonable certainty and particularity that the property is separate." *Baruch v. Clark*, 154 Idaho 732, 737, 302 P.3d 357, 362 (2013).

Rick does not dispute that The Little Gym was acquired during the marriage. He contends, however, that the district court erred by affirming the magistrate court's conclusion that the $325,000 debt was a community debt and argues that Zumberge gifted these funds to Tori. In support, Rick summarizes Zumberge's testimony, stating that Zumberge "was very clear in his testimony that there was no expectation of repayment"; "[h]e had no intent to foreclose on the obligation"; and "the note was prepared so that the transfer of money 'did not look like a gift.'" Rick, however, mischaracterizes Zumberge's testimony.

Contrary to Rick's summary of Zumberge's testimony, Zumberge testified he intended to loan--not to gift--the funds. For example, Zumberge testified that "I don't want to lose the money"; he described the loan as a "[b]usiness loan" and an "extended loan"; and he stated the reason he documented the loan was to avoid the appearance of a gift:

> Q. Okay. Now, did your accountant tell you that you needed to have a promissory note with Tori?
> A. He said it would be a good idea to do that.
> Q. And that's for income tax purposes--correct?--to document the loan?
> A. Well, he also said--you know, I lent the money. I said, Well you know, I want--I'm not going to charge you much interest. But my accountant told me, Well you have to charge some interest because, otherwise, it might look like a gift.[1]

Additionally, Zumberge did not testify that he had "no expectation of repayment," as Rick contends. Rather, Zumberge testified he did expect repayment:

> Q. Okay. And is it your expectation that, when you loan Tori money, that she will repay you?
> A. That's why--one reason why I wasn't worried about The Little Gym too much. They--they paid the first two loans I had.

---

1    The promissory note provides that "in the event the entirety of said note evidenced hereby is declared due, interest shall accrue at the rate of 3.00% per annum from such time."

4

Q. Okay.
A. So I expect to get payment, but I--you know, it--I know it takes time to start a business like that. I don't expect payment right away, so that's how we worked it in the--
Q. Okay.
A. --application.

Finally, although Zumberge did not testify he intended to "foreclose on the obligation," his testimony demonstrates he anticipated some legal recourse if the loan was not repaid:

Q. Okay. Now, if Tori is unable to pay that, do you plan to sue her?
A. I might not sue her, but I might think [sic] over the business--
Q. Okay.
A. --and maybe sell it if I can or do something with it.

Contrary to Rick's arguments, Zumberge's testimony does not support the conclusion that he gifted Tori the funds for The Little Gym.[2]

Alternatively, Rick argues the loan from Zumberge was a "soft loan," which he defines as a loan from a "close family member" who is likely to "provide favorable and relaxed treatment of the loan, including possible outright forgiveness." Rick contends this Court should treat the soft loan as a gift or at least closely scrutinize the loan's legitimacy. The only binding authority Rick cites in support is *Huerta v. Huerta*, 127 Idaho 77, 896 P.2d 985 (Ct. App. 1995). *Huerta*, however, is distinguishable. In that case, the husband's father provided $15,000 to help the couple construct a home. *Id.* at 77, 896 P.2d at 987. The wife testified that "she understood the money was a gift to both parties and would not be repaid." *Id.* at 79, 896 P.2d at 987. In contrast, the husband testified that "the money was a loan, which was to be repaid." *Id.* He also testified, however, that "his father assigned the loan to [him] after the divorce, effectively forgiving the debt." *Id.* The magistrate court concluded "the money was a gift to the community and therefore did not need to be considered in calculating the community debt." *Id.* On appeal, this Court noted "no formal documents regarding the alleged loan were ever signed nor any payment schedule or interest

---

[2] Tori's testimony, likewise, does not support a conclusion that Zumberge gifted her the funds for The Little Gym. Although Tori testified she believed the business was her separate property, she also stated she "want[ed] the Court to decide what is right." Indeed, whether The Little Gym is characterized as community or separate property is a question of law. *See Papin v. Papin*, 166 Idaho 9, 24, 454 P.3d 1092, 1107 (2019) (discussing standard of review). Accordingly, Tori's subjective belief has no bearing on the legal conclusion regarding the character of the property as community or separate.

discussed" and concluded substantial and competent evidence, albeit conflicting, supported the magistrate court's decision.

In contrast to *Huerta*, no witness in this case testified the funds for The Little Gym were a gift. Additionally, Tori signed a promissory note providing for interest on the loan; she sent Zumberge a "loan request letter" containing loan terms, which Zumberge countersigned as "approved"; and she provided a business plan showing, among other things, a schedule of investments and income projections. Although Rick challenges these documents as "*pro forma* and not [created] for the purpose of enforcement," he cites no evidence in support of this assertion. Likewise, Rick cites no evidence in support of his assertions that "there was not an actual intent to rely" on the loan documents; "the promissory note was prepared to *change the appearance of* the transfer from a gift to a loan"; and "Tori and her father specifically discussed the nature of what would constitute loans and/or gifts specifically related to this case to get their stories straight." This Court will not search the record for evidence in support of Rick's assertions. *See Kelly v. Kelly*, ___ Idaho ___, ____, 518 P.3d 326, 344 (2022) (declining to consider issue lacking record citation or to search record for supporting evidence).

Furthermore, that Tori entered into the loan in her individual capacity and refers to herself in the first person in the loan documents does not overcome the presumption, as Rick suggests, that The Little Gym is community property and that the related debt is, likewise, community. Under Idaho law, "[e]ither the husband or the wife shall have the right to manage and control the community property, and either may bind the community property by contract." I.C. § 32-912. Because Tori entered into the loan during the marriage for the purchase of community property, the debt is a community debt.

A review of the record shows Rick failed to rebut the presumption that The Little Gym was community property acquired during the marriage with community debt. Substantial and competent evidence, including Zumberge's testimony and the loan documents, supports the magistrate court's conclusion that the debt was a community debt. Accordingly, the district court did not err by affirming that decision.

## B. Valuation of The Little Gym

Rick challenges the magistrate court's valuation of The Little Gym at $100,000. At trial, Tori testified that "I would guess [The Little Gym is] valued at $100,000." On appeal, Rick disputes this testimony, stating Tori declared an opinion of value, but provided no basis for her

opinion." Accordingly, he contends that the court did not determine the value by an exercise of reason and that the court "should have zeroed out any community value," "could have divided the obligation owed to [Zumberge] equally between the parties," or "order[ed] that The Little Gym be sold."

Although Rick characterizes Tori's testimony about The Little Gym's value as a guess, Rick elicited this testimony on cross-examination but neither challenged the testimony as speculative nor inquired about the basis of her opinion. Further, owners are generally deemed competent to testify about the value of their property. *See, e.g.*, *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 21, 278 P.3d 415, 423 (2012) (ruling owner is qualified to testify to property's value). Finally, nothing in the appellate record indicates Rick requested the magistrate court to value The Little Gym in the manner he proposes on appeal, and he does not cite any evidence to support a different valuation.

For these reasons, we decline to conclude the magistrate court erred by valuing The Little Gym at $100,000. Substantial and competent evidence supports The Little Gym's valuation at $100,000 based on Tori's testimony about her involvement in the business and her estimate of its value. *See Papin*, 166 Idaho at 34, 454 P.3d at 1117 ("The disposition of community property is left to the discretion of the trial court, and unless there is evidence in the record to show an abuse of that discretion, the award of the trial court will not be disturbed.").

## C.     Costs on Appeal

Both parties seek costs on appeal. Idaho Appellate Rule 40(a) provides that "costs shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." Because Tori is the prevailing party on appeal, she is entitled to an award of costs on appeal.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusion that The Little Gym's value is $100,000 and that the related $325,000 debt is a community debt. Accordingly, the district court did not err by affirming the magistrate court's decision in this regard, and we affirm the district court's decision.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

7